## Richmond

MUTUAL OF OMAHA INSURANCE COMPANY v. FRANK ECHOLS, ET AL.,
ADM'RS, ETC.

April 24, 1967.

Record No. 6386.

Present, All the Justices.

*R. R. Rush* for the plaintiff in error.

*Wayt B. Timberlake, Jr.* (*Timberlake, Smith & Thomas*, on brief),
for the defendants in error.

GORDON, J., delivered the opinion of the court.

Dorothy Guy Echols brought this action to recover medical, nursing and hospital expenses under a major medical expense policy issued to her by Mutual of Omaha Insurance Company. Mutual of Omaha denied liability because of an alleged material misrepresentation in Mrs. Echols' application for the policy. Mrs. Echols died before trial, and the action was revived in the name of her administrators. After the trial, the court entered judgment on the jury verdict in favor of Mrs. Echols' administrators against Mutual of Omaha for $6,717.41, the amount sued for.

On March 27, 1962 Mrs. Echols made written application for the policy on a form furnished by Mutual of Omaha. The Company did not require that Mrs. Echols undergo a physical examination; instead the Company relied upon her answers to questions on the application form. One of these questions was: "Have you or any Dependents ever had, or been told you had, or received advice or treatment for: (a) any physical conditions or injuries not mentioned above, or (b) any symptoms of ill health? (Give details below)". Mrs. Echols answered "Yes" and, in the space provided for the details, listed only "Tonsillectomy as a child" and "Carbuncle".

This representation appeared at the bottom of the application form above Mrs. Echols' signature: "I represent that my above answers and statements are true and complete to the best of my knowledge and belief . . ." Mutual of Omaha issued the policy on March 27, 1962.

Mrs. Echols had a "cerebral accident or stroke" on May 13, 1963. After she made claim for benefits under the policy, Mutual of Omaha obtained a "Physician's Statement" from her family doctor, Alex F. Robertson, Jr. Opposite a question on the Statement "Had you previously treated patient for this or any other condition? Please give date and details" Dr. Robertson made this notation:

"2-6-60      fainting attack at home
"2-12-60)   not determined—urged to come to hospital
 2-25-60)   for further study and declined"

Mutual of Omaha then disclaimed any liability under the policy. It contended, and still contends, that the policy was void from its inception because Mrs. Echols made a material misrepresentation by not disclosing in her application that she had received advice or treatment for physical conditions or symptoms of ill health in February 1960.

Dr. Robertson testified that when he visited Mrs. Echols at her home on February 6, 1960, she complained "she had lost consciousness, felt faint" and was experiencing "weakness and disinterest in things in general". When he visited her on February 12 and 25, Mrs. Echols complained of fainting spells. Dr. Robertson examined her at her home, apparently on all three visits, but found no evidence of organic disorder or disease. On February 12 and 25, he urged Mrs. Echols to go to the hospital for further examination, but she refused because "[s]he didn't want to be bothered".

Dr. Robertson said he advised Mrs. Echols to go to the hospital because he thought she should have "additional examination not possible at home such as X-rays, certain lab work and any necessary consultations with other specialists if they were interested". He said that fainting spells indicated the possibility of many disabilities. The commonest cause of fainting "would be a psychic effect of some sort"; also, fainting might indicate "depleted, rundown conditions, anemia, various types of malignancy, lukemia (sic), cancer, and low blood pressure".

Mutual of Omaha's Chief Underwriter testified that if Mrs. Echols' application had disclosed "[she] was seen at her home by a doctor on February 6, February 12, and February 25, of 1960, for fainting attacks, and was urged by the said doctor to go to the hospital for further study, but . . . declined to do so," Mutual of Omaha would not have accepted her application for the policy without further inquiry.

The Chief Underwriter explained "we would not accept fainting attacks followed by several weeks of weakness as a normal reaction of nervousness and concern. Such an episode could indicate the existence of one or more conditions such as hypertension, cardiac disease, hypotension, neurological or emotional problems, cerebral accidents, hypoglycemia or anemia. The true significance would have to be determined by examination, tests and studies as ordered by her physician. Our underwriting decision would then be made on the basis of his findings and diagnosis". The Chief Underwriter said also that his Company issued individual major medical expense policies on a "selective basis".

Mrs. Echols' administrators produced two witnesses to contradict the Chief Underwriter's testimony. The court permitted them to testify about underwriting practices, over objection that they were not experts in that field.

Thomas A. Teagle, a retired insurance salesman, expressed the opinion that the companies he had represented would have issued a policy to Mrs. Echols in March 1962, even if they had known about her fainting spells in February 1960.

Mr. Teagle, though not an insurance underwriter, testified that during his forty years in the insurance business he had accumulated "a lot of experience . . . exactly how the underwriters feel in issuing the policies". He explained "I make inspections for agents on applications and for the company in a lot of cases. Now, I don't make the medical determinations, I don't do that for them, but in handling as many applications as I have handled, I feel I have some idea as to whether the company will issue the application or whether it won't". But Mr. Teagle admitted he had "sent off for a policy . . . [he] thought would be issued and the application was declined".

Dr. Robertson testified that, based upon his experience as a medical examiner, he thought Mrs. Echols was insurable on March 27, 1962. He admitted, however, he had "never had any experience with policies issued without medical examination", the type of policy involved in this case.

To escape liability under the policy, Mutual of Omaha had the burden of clearly proving that Mrs. Echols' answer in her application was material to the risk when assumed and was untrue. Va. Code Ann. § 38.1-336 (Repl. vol. 1953); *Chitwood* v. *Prudential*, 206 Va. 314, 143 S.E.2d 915 (1965).

■ The trial court gave two instructions to the jury. These instructions directed the jury to find for Mrs. Echols' administrators if it believed her answers to the questions in the application were correct "to the best of her knowledge and belief" or she did not "knowingly" make a false statement.[1]

---

[1]                    "INSTRUCTION 1

"The Court instructs the jury that, if they believe from the evidence that Mrs. Dorothy Guy Echols entered into the health and accident insurance policy in question with the defendant, Mutual of Omaha Insurance Company, on March 27, 1962, and in her application answered correctly all of the material questions propounded to her to the best of her knowledge and belief, and thereafter on or about May 13, 1963 became ill and entitled to the benefits as provided in said policy, the jury shall find for the plaintiffs, Frank Echols and Charles E. Echols, Administrators of the Estate of Dorothy Guy Echols, deceased, in the amount of $6,717.41, with interest from October 29, 1963.

                    "INSTRUCTION 2

"The Court instructs the jury that in order to defeat recovery on the insurance policy involved in this action, the burden rests upon the defendant, Mutual of

Counsel for the administrators rely upon *Sterling Insurance Company* v. *Dansey*, 195 Va. 933, 81 S.E.2d 446 (1954), to support the instructions. In the *Dansey* case, the insured stated in his application that, to the best of his knowledge and belief, he had never had diabetes. At the time he executed the application he had diabetes, but the jury found that he did not know it. We held that this misrepresentation did not permit the insurance company to cancel the policy because the application form required only that the statements be true and correct to the best of the applicant's knowledge and belief. The insurance company required the applicant to make only the qualified representation that his answers were correct to the best of his knowledge and belief, instead of requiring him to make the unqualified representation that his answers were correct. Because the insured had complied with the insurance company's requirement, the company had no right to cancel the policy.

But we have a different case. Mrs. Echols' statements were not true and correct to the best of her knowledge and belief. She admitted in her motion for judgment that in February 1960 she "became nervous with accompanying weakness and faintness . . . and . . . had Dr. Robertson make two or three calls upon her at her home for examination and consultation . . ." Yet, in answer to the question about advice and treatment for physical conditions or symptoms of ill health, she listed only "Tonsillectomy as a child" and "Carbuncle". Because Mrs. Echols knew the statement was not correct, the court should not have submitted to the jury the question whether her statement was correct to the best of her knowledge and belief.

■ By its instructions the trial court also directed the jury to find for Mrs. Echols' administrators if it believed she made no *material* false statement in her application for the policy. (See footnote 1.) But the court, not the jury, should have determined whether the facts Mrs. Echols failed to disclose in her application were material to the risk assumed by Mutual of Omaha. *Chitwood* v. *Prudential, supra*. Because the trial court did not determine materiality, we must make that determination.

A fact is material to the risk to be assumed by an insurance com-

Omaha, to prove by a preponderance of the evidence that Mrs. Dorothy Guy Echols knowingly made a material false statement in answer to Question 1 in the application and unless the defendant, Mutual of Omaha, has proven by a preponderance of the evidence that Mrs. Echols did knowingly make a false statement as to a material fact in Question 1 of the application, you shall find a verdict in favor of the plaintiffs and fix their damages at $6,717.41 with interest from October 29, 1963."

pany if the fact would reasonably influence the company's decision whether or not to issue a policy. *Appleman, Insurance Law and Practice,* §§ 214, 245 (1965); *Couch, Insurance* 2d § 35:83 (1961); *Vance, Insurance* 376-78 (3d ed. Anderson 1951).

Mutual of Omaha produced evidence that showed the materiality of Mrs. Echols' fainting spells in 1960. Its Chief Underwriter testified the Company would not have issued a policy to Mrs. Echols on the basis of her application if the application had disclosed her fainting spells. He said that if the Company had known about the fainting spells, it would have required a medical examination and would have made its decision whether to issue the policy in light of the physician's report. " 'Representations in an application for a policy of insurance should not only be true but full. The insurer has the right to know the whole truth. If a true disclosure is made, it is put on guard to make its own inquiries, and determine whether or not the risk should be assumed.' " *Chitwood* v. *Prudential, supra,* at 318, 143 S.E.2d at 918.[2]

Counsel for Mrs. Echols' administrators attempted to prove by the testimony of Mr. Teagle and Dr. Robertson that Mrs. Echols' fainting spells were not material to the risk.

Mr. Teagle's testimony shows that his only familiarity with underwriting practices was derived from his experience in receiving favorable or unfavorable action on policy applications he had forwarded to various insurance companies. Such experience did not qualify him to express the opinion, as an expert on underwriting practices, that Mutual of Omaha would have issued a policy to Mrs. Echols even if her application had disclosed her fainting spells.

Dr. Robertson based his opinion that Mrs. Echols was "insurable" on his experience as a medical examiner for insurance companies. But Mutual of Omaha did not rely upon a medical examination when it issued the policy to Mrs. Echols; the Company relied solely on the facts disclosed by Mrs. Echols' application.

Dr. Robertson, by his own admission, had no experience with policies issued without a medical examination. His testimony therefore can have no bearing upon the question whether Mutual of

2 Counsel for the administrators argue that "Mrs. Echols was not suffering from any physical malady or disorder, in February, 1960, but was upset because of a family problem". They point to Dr. Robertson's testimony that he advised her to go to the hospital for an examination in February 1960 partly to reassure her, but largely to reassure her family. But Mutual of Omaha had the right to make its own inquiry and determination of the significance of Mrs. Echols' fainting spells in February 1960. *Chitwood* v. *Prudential, supra.*

Omaha, if it had known of Mrs. Echols' fainting spells, would have issued a policy to her solely on the basis of her application.

We hold that Mrs. Echols made a material misrepresentation in her application for the policy. Our order will therefore reverse the judgment of the Circuit Court and enter final judgment for Mutual of Omaha Insurance Company.

*Reversed and final judgment.*