## Richmond

UNITED STATES FIDELITY AND GUARANTY COMPANY V. FRED W. HAYWOOD, ET AL., ETC.

November 30, 1970.

Record No. 7187.

Present, All the Justices.

*James F. Johnson* (*William B. Poff; Woods, Rogers, Muse, Walker & Thornton*, on brief), for plaintiff in error.

*William T. Wilson; Hale Collins* (*Collins & Wilson*, on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

In a motion for declaratory judgment filed against Fred W. Haywood and Stephen N. Haywood, United States Fidelity and Guaranty Company sought to have declared void a fire insurance binder issued in the name of Stephen N. Haywood, trading as Covington Vending Service. The basis of the claim for relief was that Fred W. Haywood, in order to obtain insurance on vending machines owned by him, had wilfully misrepresented to USF&G's agent that he was Stephen N. Haywood. It was alleged that the misrepresentation was not discovered by USF&G until after the vending machines were destroyed by fire, and it was then learned that Stephen was Fred's minor son and that Fred had more than twenty unsatisfied judgments against him. It was further alleged that the insurance binder would not have been issued if the agent had known the true facts.

Fred and Stephen filed an answer denying the allegations of misrepresentation. Thereafter, there was submitted to a jury the question whether a misrepresentation was made by Fred. The jury found that Fred "did wilfully misrepresent his identity" for the purpose of obtaining insurance. However, the trial court held that the misrepresentation "was not material to the risks assumed" by USF&G and ruled that the binder issued in the name of Stephen constituted valid and subsisting insurance. Fred was dismissed as a party defendant. We granted USF&G a writ of error.

In the summer of 1967, Fred W. Haywood, then 42 years old and a resident of the Richmond area, decided to move to Covington and to establish there a vending machine business. While looking for a home in Covington, he met Robert B. McCaleb, a local real estate broker. He introduced himself to McCaleb as Stephen N. Haywood. McCaleb showed Haywood a house that was for sale and eventually secured a contract from him. Throughout the transaction, Haywood represented himself to McCaleb as Stephen N. Haywood. Even the contract on the house was signed in that name.

During discussions concerning the house, Haywood advised McCaleb of his plans to establish a vending machine business in Covington. McCaleb, who was USF&G's agent, told Haywood that he was in the insurance business and would like to be considered when Haywood "got his operation going."

Haywood rented a warehouse in Covington and moved in a quantity of vending machines. He then requested McCaleb to insure the machines. On September 14, 1967, McCaleb issued the binder in question providing fire insurance protection in the sum of $20,000 for

thirty days on vending machines in storage in the warehouse. The binder was issued in the name of "Stephen N. Haywood T/A Covington Vending Service" according to instructions given McCaleb by Haywood.

Upon issuance of the binder, McCaleb, following his usual practice, requested the credit bureau of Covington to furnish him a report on Stephen Haywood's background in Richmond. After some time, the bureau advised McCaleb that it "couldn't find anything on this man." McCaleb insisted that "there's bound to be something" and asked the bureau to make a second check.

On September 22, 1967, eight days after issuance of the binder, an accidental fire occurred at the warehouse where the vending machines were stored. The machines were destroyed.

Following the fire, McCaleb received the credit bureau's report on Stephen. The report showed the subject to be single. This was contrary to McCaleb's understanding that the person with whom he had been dealing was "a married man with three children." The discrepancy in the report led McCaleb to investigate further. His investigation revealed that the person to whom he had issued the binder was not Stephen N. Haywood but was Fred W. Haywood. McCaleb also found that Stephen was Fred's minor son, 19 years of age, and that Fred had more than twenty unsatisfied judgments against him in the Richmond area.

When claim was made against USF&G for loss of the vending machines, it refused to pay, relying upon the misrepresentation perpetrated by Fred. The present litigation ensued.

■ To be entitled to the relief it sought—the voidance of the binder—USF&G had the burden of clearly proving that Fred Haywood falsely represented his identity and that the representation was material to the risk when assumed. Code § 38.1-336; *Mutual of Omaha* v. *Echols' Adm'rs*, 207 Va. 949, 952, 154 S.E.2d 169, 171 (1967). In a case like this, whether a representation is made and the terms on which it is made are questions of fact for the jury; but when a misrepresentation is proved, its materiality is a question of law for the court. *Chitwood* v. *Prudential*, 206 Va. 314, 318, 143 S.E.2d 915, 918 (1965).

■ The jury's verdict in this case established that Fred Haywood wilfully misrepresented his identity to McCaleb for the purpose of obtaining insurance. The verdict was approved by the trial court, but the court concluded that the misrepresentation was immaterial because

Fred Haywood "did not own the property to be insured and there was no misrepresentation on the part of Stephen Haywood the lawful owner." Crucial to the correctness of the court's ruling on materiality is its finding that Stephen alone owned the vending machines, for if Fred owned the machines in whole or in part, a different result necessarily would follow.

We are of opinion that the evidence does not support a finding that Stephen alone owned the vending machines. To the contrary, the only conclusion that can be fairly reached from the evidence is that Fred, if not the sole owner, had a substantial interest in the machines.

The evidence showed that Fred had been in the vending machine business in the Richmond area for a number of years operating under different fictitious names. It was as a result of the operation of one of his earlier businesses that more than twenty judgments were entered against him.

Stephen, although a full-time student, was claimed to be actively involved in the conduct of the vending machine business. He was portrayed as a partner with his father in a Richmond company which was sold just prior to the formulation of Fred's plan to move to Covington.

The vending machines here in dispute were purchased specifically for use in the Covington venture. That venture, according to Stephen, was set up pursuant to "a verbal agreement" that he "worked out" with Fred whereby the latter "would operate [the business] and get everything going smoothly" while he, Stephen, was in college. Fred, amplifying what the arrangement was between Stephen and him with respect to the Covington business, testified that it was a "partnership." When asked "who was the owner" of the business, Fred said, "my son and myself."

It is true that both Fred and Stephen testified that the machines were purchased in Stephen's name. But whatever that may have proved, it did not show sole ownership in Stephen. To the contrary, the undisputed testimony that the Covington venture was a "partnership" owned by Fred and Stephen was conclusive evidence of Fred's substantial interest in the machines.

Thus, the misrepresentation of identity by Fred concealed the fact that he had an interest in the machines and prevented inquiry into his background, an inquiry which would have disclosed the presence of the unsatisfied judgments against him. That this misrepresentation was material was clearly shown by the evidence.

■ McCaleb, USF&G's agent, testified that if he had known that the man with whom he was dealing was Fred Haywood and had known of the judgments against Fred, he would not have issued the binder. In the case of fire insurance, McCaleb said, the fact that an individual has judgments against him presents a "moral hazard" because there is a "temptation to commit arson" to collect the insurance. This uncontradicted testimony meets the established test that a "fact is material to the risk to be assumed by an insurance company if the fact would reasonably influence the company's decision whether or not to issue a policy. . . ." *Mutual of Omaha* v. *Echols' Adm'rs, supra*, 207 Va. at 953-54, 154 S.E.2d at 172.

In their brief, the Haywoods suggested that USF&G did not bear its burden of proof because it did not call one of its underwriters to testify on the materiality question, but relied instead on McCaleb's testimony alone. However, McCaleb had the authority to issue and did issue the binder in question, and he was, therefore, a competent witness to testify that he would have rejected the risk had he known the true facts.

We conclude that the deception practiced by Fred was the false representation of a fact material to the risk when assumed. We find it unnecessary, therefore, to consider USF&G's further contention that the concealment of Stephen's age was also material.

Having clearly proved that Fred Haywood falsely represented his identity and that the representation was material, USF&G was entitled to have the insurance binder issued by it declared void. Accordingly, the judgment of the trial court will be reversed and the case remanded with directions to reinstate Fred Haywood as a party defendant and to enter judgment declaring the binder to be void.

*Reversed and remanded.*