## Richmond

NATIONWIDE MUTUAL INSURANCE COMPANY v. GOVERNMENT EMPLOYEES INSURANCE COMPANY.

March 10, 1975.

Record No. 740128.

Present, All the Justices.

*James N. Garrett, Jr.* (*Garrett, Garrett & Garrett,* on brief), for plaintiff in error.

*William M. Harris* (*Taylor, Gustin, Harris, Fears & Davis,* on brief), for defendant in error.

Compton, J., delivered the opinion of the court.

In this case, we decide a question of insurance coverage. It involves the validity of a provision in a garage liability policy which excludes a permissive user from coverage if possession of the vehicle had been transferred to such user by the named insured pursuant to an agreement of sale.

Government Employees Insurance Company (GEICO) filed a motion for judgment against Nationwide Mutual Insurance Company seeking indemnification in the amount of $8,167.68, as

the result of payments it made in connection with certain uninsured motorist claims arising from an accident which occurred on January 24, 1970, in Portsmouth, Virginia. The trial court, sitting without a jury, decided that a policy of garage liability insurance, issued by Nationwide to Gosport Motor Service, covered the operation by Charles Powell of a 1958 Dodge automobile at the time of the accident and entered judgment in favor of GEICO. A writ of error was awarded Nationwide to review this judgment. We reverse.

On January 2, 1970, Obie Brown, formerly a resident of North Carolina but then living in Portsmouth, managed to start his previously inoperative 1958 Dodge sedan, which had been parked in the yard of his residence for some time. He had decided to "junk" the 1958 Dodge and to purchase a 1965 Dodge Coronet, which he had observed on the premises of Frank P. and Louis J. Eates, trading as Gosport Motor Service, a used automobile sales and service business in Portsmouth. While on his way to a junk yard to dispose of the car, Brown stopped at the Gosport used car lot to obtain some information on the 1965 vehicle. While there, his car became inoperative again.

After some discussion with Joseph Battaglia, employed by Gosport as a commission salesman, Brown agreed to purchase the 1965 Dodge for $995. The "used car invoice" showed "NO TRADE" and Brown testified that Gosport "wouldn't take [the 1958 car] as a trade."

After Brown failed in several attempts to start the 1958 Dodge for the purpose of driving it to a junk yard, Battaglia approached Brown and stated that if Brown would leave the car on the Gosport lot, he would try to "get rid of it" and that he would give Brown "half of whatever he got on the car." Brown agreed. He then endorsed in blank the North Carolina title certificate for the 1958 vehicle, which was in the vehicle, and handed it to Battaglia with the keys to the car. The North Carolina license plates were not removed from the vehicle. Brown then drove away in the 1965 Dodge and, later that day, arranged for the transfer of the liability insurance coverage from the 1958 Dodge to the 1965 vehicle.

The 1958 Dodge remained on the Gosport used car lot until Charles Powell acquired possession of it on January 24, 1970, the day of the accident. Powell had previously noticed the car on the lot parked near the sales office. On January 24, he went to the

office, and as the result of his conversation with Louis Eates, Battaglia and Kenny McDaniels, another Gosport salesman, agreed to purchase the 1958 Dodge for fifty dollars cash. The money was handed to Eates who prepared a handwritten "receipt" on a blank sheet of paper.

Another car was driven adjacent to the 1958 Dodge and it was started with the use of "jumper cables." Eates handed Powell the North Carolina title certificate endorsed in blank by Brown, and instructed Powell to take it with the "receipt" to a notary public or justice of the peace and "they would fix it up" and "transfer it to [Powell's] name." The North Carolina license plates were still on the car, and Powell was directed to return them to Gosport after he "got the car home."

Powell never reached his home with the car. He drove several blocks from Gosport's lot and left it at a garage to be serviced. Several hours later, as he was driving the car from the garage to his home, it collided with another vehicle operated by Amanda B. Wooten.

At the time of the collision, the Wooten vehicle was covered by a GEICO automobile liability insurance policy containing the standard uninsured motorist endorsement. When the driver and the three passengers in the Wooten vehicle made personal injury claims against Powell, Nationwide rejected GEICO's demand to assume the adjustment of these claims, contending that it did not owe coverage to Powell under its garage liability policy issued to Gosport. GEICO then settled the several claims under its uninsured motorist coverage after having determined that, as the result of Nationwide's denial of coverage, Powell was uninsured and that he was negligent.

The broad issue is whether Powell's operation of the 1958 Dodge at the time of the accident was covered under Nationwide's policy. If it was, GEICO prevails; if it was not, Nationwide prevails. The specific issue we decide is whether Nationwide's policy provision, sometimes called an escape clause, which eliminated Powell as an "insured," was valid.

Nationwide's policy was issued to "Frank P. & Louis J. Eates T/A Gosport Motor Service" as the "Named Insured" for a one year period beginning May 4, 1969. Under the "Garage Insurance Coverage," it agreed to pay on behalf of its insured ". . . all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury . . . to which this insurance

applies, caused by an occurrence and arising out of garage operations, including only the automobile hazard for which insurance is afforded . . . ."

"Automobile hazard" is defined as the "ownership, maintenance or use . . . of any automobile for the purpose of garage operations . . ." and, additionally, as the "use in connection with garage operations of any automobile which is neither owned nor hired by the Named Insured, . . ."

In the policy, " 'garage' means an automobile sales agency . . ." and " 'garage operations' means the ownership, maintenance or use of the premises for the purposes of a garage and all operations necessary or incidental thereto . . . ."

Under the section, " PERSONS INSURED," the policy defined "insured" as the named insured and ". . . any person while using, with the permission of the Named Insured, any automobile to which the insurance applies under the automobile hazard, provided his actual operation . . . is within the scope of such permission . . . ." Within the same section is found the escape clause in question, which provided that: "None of the following is an Insured: . . . any person, other than the Named Insured with respect to any automobile . . . possession of which has been transferred to another by the Named Insured pursuant to an agreement of sale . . . ."

GEICO argues, and the trial court so held in a memorandum opinion, that Powell was covered by Nationwide's policy for the reasons that his use fell within the broad definition of "garage operations," Powell was the permissive user of Brown's vehicle, and the exclusion relied on by Nationwide was void as being repugnant to the omnibus clause. Code § 38.1-381(a). Nationwide argues that its policy did not cover Powell's operation of the 1958 Dodge, because there was "no possible rational connection between what he was doing at the time of the accident and 'garage operations' . . . ."

Alternatively, Nationwide contends that the escape clause is valid and relieves it of liability since Powell's possession of the 1958 Dodge had been transferred to him by Nationwide's named insured pursuant to an agreement of sale. We agree.

We will assume without deciding that the vehicle was still owned by Brown at the time of the accident,[1] that Powell was its

---

[1] No contention is made by GEICO that Gosport ever acquired title to the vehicle.

permissive user, and that his use fell within the policy definition of "garage operations." Therefore, Powell was entitled to coverage under Nationwide's policy, unless the escape clause was valid.

■ Admittedly, possession of the vehicle had been transferred by Eates pursuant to the agreement of sale, but GEICO argues that the escape clause is void because it conflicts with Code § 38.1-381(a), the omnibus clause.[2] It contends that since the policy excludes from coverage a permissive user who obtained possession of the vehicle from the named insured pursuant to an agreement of sale, the effect is to restrict the scope of the coverage with regard to one class of permissive users, although the coverage is not so limited to the named insured.

As GEICO points out, we have held similar limitations void as being repugnant to the omnibus clause, because, under the statute, the permissive user is entitled to the identical protection afforded the named insured; that is, the same quantity and quality of coverage. *Hardware Mutual Casualty Company* v. *General Accident Fire and Life Assurance Corporation, Ltd.*, 212 Va. 780, 188 S.E.2d 218 (1972); *Hardware Mutual Casualty Company* v. *Celina Mutual Insurance Company*, 209 Va. 60, 161 S.E.2d 680 (1968); *American Motorists Insurance Company* v. *Kaplan*, 209 Va. 53, 161 S.E.2d 675 (1968).

But a significant feature of this case, overlooked by GEICO, renders the foregoing cases, upon which it relies, inapposite. In those cases, owners' policies were involved. The insured in each garage liability policy owned the vehicle in question. In *General Accident*, the operator of the Chevrolet at the time of the accident was the permissive user of the vehicle owned by the insured new car dealer. In *Celina Mutual*, the permissive user

---

[2] At the time of this accident, Code § 38.1-381(a) provided in pertinent part:

"§ 38.1-381. **Liability insurance on motor vehicles and watercraft; standard provisions, 'omnibus clause.'** — (a) No policy or contract of bodily injury liability insurance, or of property damage liability insurance, covering liability arising from the ownership, maintenance or use of any motor vehicle ... shall be issued or delivered in this State to the owner of such vehicle ... or shall be issued or delivered by any insurer licensed in this State upon any motor vehicle ... then principally garaged ... or principally used in this State, unless it contains a provision insuring the named insured and any other person responsible for the use of or using the motor vehicle ... with the consent, expressed or implied, of the named insured, against liability for death or injury sustained, or loss or damage occasioned within the coverage of the policy or contract as a result of negligence in the operation or use of such vehicle ... by the named insured or by any such person ...."

operated a loaned truck owned by the insured automobile sales agency. In *Kaplan,* the permissive user was test-driving a vehicle owned by the insured automobile dealer.

Here, we are not dealing with an owner's policy. The vehicle operated by Powell was, as to Gosport, a nonowned vehicle, that is, Gosport did not own the 1958 Dodge.

By the force of its provisions, Code § 38.1-381(a) is made a part of each motor vehicle liability policy to which it applies. "But even so, we must look to the words used in the statute to determine its meaning, and only the meaning of the statute as determined should be given effect." *Rose* v. *Travelers Indemnity Co.,* 209 Va. 755, 758, 167 S.E.2d 339, 342 (1969).

Insofar as pertinent here, the statute is applicable when a policy covering bodily injury liability arising from the ownership, maintenance, or use of any motor vehicle is " (1) 'issued or delivered in this State to the *owner* of such vehicle,' or (2) when 'issued or delivered by any insurer licensed in this State upon *any* motor vehicle . . . *then* principally garaged . . . or principally used in this State.' " *Id.* (Emphasis added)

In this case, since Nationwide's policy was not issued to the "owner" of the 1958 Dodge, the statute does not apply under the first category *supra,* and this policy contains a valid restriction on the scope of coverage granted to the permissive user of a nonowned vehicle and is not repugnant to the omnibus clause. *Clarke* v. *Harleysville Mut. Casualty Co.,* 123 F.2d 499 (4th Cir. 1941).

■ The second category applies to policies upon *any* motor vehicle, if the insurer is licensed in Virginia and if the vehicle is *then* principally garaged or used in Virginia. Even assuming that the evidence in this record is sufficient to show that Nationwide was an insurer licensed in Virginia, it nevertheless fails to show that when the Nationwide policy was issued or delivered to Gosport on or about May 4, 1969, the vehicle in question was *then* principally garaged or *then* principally used in this State. Such proof is necessary for the statutory provisions to act upon the policy in question.

Therefore, it is apparent that the omnibus clause is not applicable under either of the foregoing provisions. In order for GEICO to claim the benefit of the statute, so as to render void any policy restriction on the permissive use contemplated by the

statute, it must show that the Nationwide policy fell within either of the foregoing two categories. *Rose* v. *Travelers Indemnity Co., supra,* 209 Va. at 758, 168 S.E.2d at 342. This it has failed to do. Accordingly, the escape clause is valid, and Powell was not an "insured" under Nationwide's policy. *Grange Mutual Casualty Company* v. *Criterion Insurance Company,* 212 Va. 753, 188 S.E.2d 91 (1972).

For these reasons, the judgment of the trial court in favor of GEICO will be reversed and final judgment will be here entered in favor of Nationwide.

*Reversed and final judgment.*