## CIRCUIT COURT OF STAFFORD COUNTY

Katrina Wahl Brant

v.

Robert Michael Parsio,
Pennsylvania General Ins. Co.,
General Accident Ins. Co. of Am., and
The Continental Ins. Co. of N.J.

April 14, 1992

Case No. (Chancery) 68–91

BY JUDGE JAMES W. HALEY, JR.

In this Declaratory Judgment action, Katrina Wahl Brant ("Wahl") asks the court to find that the provisions of Virginia Code § 38.2–2206 require that underinsured motorist coverage ("UM coverage") in an amount of $100,000.00 be included within an automobile insurance policy ("the policy") issued her by General Accident Insurance Company of America.

The policy was initially issued to Wahl by the Cerow Agency, Inc., 221 John Street, Clayton, New York 13624, effective July 2, 1986, and terminating July 2, 1987 (Exhibit C attached to the Declaratory Judgment Action). Among items on the "Declaration Page" of the policy is: "Your name and address." Wahl gave as her address "825 Union Street, Clayton, New York," where she then lived, and it was to this address the original policy was delivered. This new

policy issued to Wahl had liability limits of $100,000.00 and UM coverage of $20,000.00. The Cerow Agency is an independent agency, serving approximately five insurance companies, as well as New York assigned risk companies (Deposition *de bene esse*, p. 4).

In October, 1986, Wahl moved to a rented apartment in Triangle, Virginia, and she began work as a civilian employee on the United States Marine Corps Base at Quantico, Virginia. The lease for this apartment (Pl. Ex. B) is dated November 2, 1986, for a term of one year.

By agreement dated March 9, 1987, Wahl and her then fiance, John W. Brant, contracted to lease, effective September 11, 1987, and subsequently buy, 1033 Lakeview Drive, Stafford, Virginia. (Pl. Ex. A). The settlement on the purchase of this property occurred on October 1, 1987. (Pl. Ex. D.) There Wahl presently lives.

Despite these transactions, when Wahl renewed the policy effective July 2, 1987, terminating January 2, 1988, she gave as her address "Box 211, Clayton, New York"[1] which was her parents' address and where she had not lived since 1977. It was to this address that Cerow mailed the policy.

On October 18, 1987, Wahl was operating her vehicle insured under the policy and collided with a vehicle operated by one Robert Michael Parsio. Parsio had been issued a policy by Continental Insurance of New Jersey with liability limits of $25,000.00 for bodily injury. Code § 38.2–2206(B) states that a vehicle is "underinsured" when its liability coverage is less than the UM Coverage ". . . afforded any person injured . . ." by that vehicle. Accordingly, Parsio is "underinsured" if Wahl has $100,000.00 UM Coverage.

Though Wahl claims she had earlier advised the Cerow Agency that she lived in Virginia, Deanna LaLonde of that agency denied ever being told of this place of residence, believing it was always Box 211, Clayton, New York. Ms. LaLonde further noted that if they had known Wahl lived in Virginia, they could not write the insurance because the Cerow Agency is "only licensed in New York State" and somebody "in Virginia would have had to have sold the policy." (Deposition *de bene esse*, p. 13.)

On August 25, 1988, Wahl wrote to the Cerow Agency, after having again renewed her insurance on January 2, 1988, and again de-

---

[1] This is a rural residence address, not a Post Office Box number.

clared her address was Box 211, Clayton, New York. Portions of this letter (Def. Ex. 2) read as follows:

> I went ahead and checked with Allstate down here and they were willing to cover us, but as we owned property in New York and Virginia was only a temporary resident, they felt that Virginia would not require me to change over. The reason, of course, that I'd like to keep the N. Y. insurance is that the protection is better, and you have taken excellent care of me . . . .
>
> My mother is sending me the mail in between my coming up home when I'm not in California or Indiana.
>
> The address for Virginia is: 1022 Lakeview Dr., Stafford, Virginia 22554.

Introduced as Defendant's Exhibit 1 were the registration of the Wahl vehicle insured under the policy. The first, valid from July 21, 1986, to May 14, 1987, and the second, valid from July 19, 1987, to May 14, 1988, both show Wahl registered her car in New York State and gave as her address "825 Union Street, Clayton, New York."

It was not until 1988 at the earliest, after Wahl had been living in Virginia since November, 1986, that Wahl: (1) registered her car in Virginia and paid the required license fees, (2) filed an informational return of personal property with a Commissioner of Revenue, (3) paid any personal property taxes as a consequence, (4) obtained a Virginia operator's license, or (5) registered to vote.

Wahl testified:

> Q. So the first time that you signed anything saying that your vehicle was principally garaged in Virginia was in your 1988 information return as to personal property; is that correct?
>
> A. That's correct. (Tr. 31.)

The parties have agreed that General Accident Insurance Company of America is licensed to do business in Virginia.

Wahl's W-2 form for 1986 (Pl. Ex. E) and Wahl's tax return for 1987 (Pl. Ex. F) both show that Wahl had withheld from her pay, and paid, Virginia income taxes.

Code § 38.2–2206 (UM Coverage) reads in part as follows:

> no policy or contract of bodily injury or property damage liability insurance relating to the ownership, maintenance,

or use of a motor vehicle shall be issued or delivered in this Commonwealth to the owner of such vehicle or shall be issued or delivered by any insurer licensed in this Commonwealth upon any motor vehicle principally garaged or used in this Commonwealth unless it contains an endorsement or provisions undertaking to pay the insured all sums that he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits not less than the requirements of § 46.2–100. Those limits shall equal but not exceed the limits of the liability insurance provided by the policy, unless the insured rejects the additional uninsured motorist insurance coverage by notifying the insurer as provided in subsection B of § 38.2–2202.

Code § 38.2–2202(B) requires that:

No new policy or original premium notice of insurance covering liability arising out of the ownership . . . or use of any motor vehicle . . . be issued or delivered unless . . . .

the insured is given notice that he is entitled to obtain UM Coverage in an amount equal to liability coverage, and such equal coverage will be included in the policy unless the insured affirmatively rejects that coverage within twenty days.

The core of Wahl's argument for Virginia UM Coverage is that at the time of her accident on October 18, 1987, her vehicle was "principally garaged or used" in Virginia and that since she had $100,000.00 liability coverage, she is entitled to $100,000.00 UM Coverage because she did not reject such coverage.

Wahl does not claim, except by inference, that her policy was "issued or delivered" in Virginia. There is no evidence but that the policy was sent to a New York address. Deposit in the mail to a non-Virginia address constitutes issuance and delivery to that address. *Rose v. Travelers Indemnity Co.*, 209 Va. 755, 758–759, 167 S.E.2d 339, 341 (1969); *Grange Mutual Casualty Co. v. Criterion Insurance Co.*, 212 Va. 753, 188 S.E.2d 91 (1972).

Prior to 1986, the word "then" appeared immediately before the phrase "principally garaged or used" in former Code § 38.1–381(a), now Code § 38.2–2206 quoted above.

In *Rose v. Travelers Indemnity Co.*, 209 Va. 755, 759, 167 S.E.2d 339, 342–343 (1969), the Virginia Supreme Court stated:

Plaintiff next says that since Travelers was licensed in this State and the evidence shows that the car was principally used on the highways of Virginia, she falls within the second category of Code § 38.1–381(1). We do not agree.

That part of the statute to which plaintiff refers is applicable when the insurer is licensed in this State and it issues or delivers a policy covering a motor vehicle *then* principally garaged or principally used in Virginia. The key word *then* refers to the place where the car is principally garaged or principally used at the time the policy is issued, and not where it is principally garaged or principally used at a subsequent time. At the time Travelers issued the policy, the car was not *then* principally garaged or principally used in Virginia.

For the reasons stated, we are of the opinion that Code § 38.1–381 is not applicable under the law and evidence in this case, and the judgment of the court below is affirmed. (Emphasis in original.)

*See also, Wood v. State Farm Mut. Auto. Ins. Co.*, 432 F. Supp. 41, 43 (W.D. Va. 1977); *Nationwide Mutual Insurance Co. v. GEICO*, 215 Va. 676, 681, 212 S.E.2d 297, 304 (1975).

In the recodification of Title 38.1 by Acts of Assembly, 1986 Session Chapter 562, pp. 1104–1394, the word "then" was removed from the prior provisions of Code § 38.1–381(a).

When the General Assembly changes the provisions of uninsured motorist coverage, it is to be concluded "that the legislature was consciously and deliberately selective." *GEICO v. Universal Underwriters Ins. Co.*, 232 Va. 326, 329, 350 S.E.2d 612, 614 (1986), and there is "a presumption that a substantive change in law was intended by an amendment to an existing statute. *Richmond v. Sutherland*, 114 Va. 688, 693, 77 S.E. 470, 472 (1913)." *Dale v. City of Newport News*, 243 Va. 48, 51, 412 S.E.2d 701, 702 (1992); *Dairyland Ins. Co. v. Sylva*, 242 Va. 191, 193, 409 S.E.2d 127, 130 (1991).

From the foregoing, it is clear that the legislature has determined that UM Coverage, in accord with the provisions of Code § 38.2–2202(B), is to be provided if *at the date of the incident giving rise to the claim*, the insured vehicle is principally garaged or used in Virginia.

With respect to the notice and rejection provisions of Code § 38.2–2202(B), in *White v. National Union Fire Ins. Co.*, 715 F.

Supp. 1339 (W.D. Va. 1989), affirmed, 913 F.2d 165 (4th Cir. 1990), the Appellate Court stated at page 169:

> Information that supports an inference by the insurer that the insured intends to reject a default level of coverage does not suffice, under Virginia law, as an actual "rejection" of that coverage. The statute's plain language explicitly required Manville to reject the default coverage by notifying National Union of that rejection. Furthermore, the law's explicit rejection requirement is consistent with its purpose of affording adequate protection to those injured by underinsured motorists. See, *Grossman v. Glens Falls Ins. Co.*, 211 Va. 195, 176 S.E.2d 318 (1970).

*See also, Bray v. Insurance Co. of the State of Pa.*, 917 F.2d 130, 133 (4th Cir. 1990).

Each provision of the Virginia Automobile Insurance statutes "is as much a part of the policy as if incorporated therein." *State Farm Mut. Auto. Ins. Co. v. Duncan*, 203 Va. 440, 443, 125 S.E.2d 154, 157 (1962). *See also, Aetna Cas. Co. v. National Union Fire Ins. Co.*, 233 Va. 49, 353 S.E.2d 894 (1987); *General Accident v. Aetna Cas. & Sur. Co.*, 208 Va. 467, 158 S.E.2d 750 (1968).

In *Grossman v. Glen Falls Ins. Co.*, 211 Va. 195, 197, 176 S.E.2d 318, 320–321 (1970), the Court stated:

> The Uninsured Motorist Law was enacted for the benefit of injured persons, is remedial in nature, and is liberally construed so that the purpose intended may be accomplished. It is primarily concerned with providing adequate compensation for injured insureds when other sources are lacking. A motorist pays an additional premium on his liability policy in order that he might be afforded "coverage" or "protection" in event of an accident with an automobile that is uninsured.

*See also, Hill v. State Farm Mutual Auto Ins.*, 237 Va. 148, 375 S.E.2d 727 (1989); *Nationwide Mutual v. Sours*, 205 Va. 602, 139 S.E.2d 51 (1964); *State Farm Mut. Auto. Ins. v. Brower*, 204 Va. 887, 134 S.E.2d 277 (1964).

In *Nationwide Mut. Ins. Co. v. GEICO, supra*, though dealing with the "omnibus clause" provisions of then Code § 38.1–381 (now Code § 38.2–2204), the court placed upon the plaintiff the burden of

proof that the vehicle was at the time of policy issuance principally garaged or used in Virginia. The court noted that: "Such proof is necessary for the statutory provisions to act upon the policy in question."

Accordingly, in this proceeding, Wahl, as her pleadings acknowledge, bears the burden of proving that on October 18, 1987, the date of the accident, her car "was principally garaged or used" in Virginia.

Wahl has shown by the preponderance of the evidence that at least since November, 1986, and including October 18, 1987, the date of the accident, she has been living and working in Virginia. That fact, however, is not necessarily determinative as to whether her car was "principally garaged or used" in Virginia, as that phrase is used in Code § 38.2–2206.

The evidence in the instant case is uncontradicted that Wahl did not register her car, or file an informational return of tangible personal property, or pay any personal property taxes, or obtain a county licensing sticker, all in Virginia, until 1988. The place of registration and licensing is to be considered in UM Coverage cases. *See, Rose, supra*, 209 Va. at 758; *Grange Mut. Cas. Co., supra*, 212 Va. at 756.

Automobiles are subject to personal property taxes. Code § 58.1–3503(A)(3). Every taxpayer owning an automobile as of January 1 of each year is required to file a return by May 1 of each year with the Commissioner of Revenue for his county. Code § 58.1–3518. Code § 58.1–3511 states, with respect to the situs for personal property taxation,

> the situs for purposes of assessment of motor vehicles . . . shall be in the county . . . where the vehicle is *normally garaged* . . . Any person domiciled in another state, whose motor vehicle is *principally garaged* . . . in this Commonwealth during the tax year, shall not be subject to a personal property tax on such vehicle upon a showing of sufficient evidence that such person has paid a personal property tax on the vehicle in the state in which he is domiciled. (Emphasis supplied.)

Wahl cannot claim she is a resident or domiciliary of another state, and thereby claim the exemption, because paragraph 10 of her Mo-

tion for Declaratory Judgment states that: "At the time of the accident, plaintiff was a resident of the Commonwealth of Virginia . . ."

Pursuant to the provisions of Code § 46.2–752, Stafford County imposes a local motor vehicle registration tax on residents.[2] The situs for such taxation is "the county . . . in which the motor vehicle . . . is *normally garaged* . . ." And in determining situs, the factors "of location, time, purpose and use . . ." are to be considered. *Arlington County v. Stull*, 217 Va. 238, 241–242, 227 S.E.2d 698, 700 (1976).

Code § 46.2–662 states in part that:

A resident owner of any passenger car . . . which has been duly registered for the current calendar year in another state . . . may operate . . . the passenger car . . . within or partly within the Commonwealth for the first thirty days of his residency in the Commonwealth without registering the passenger car . . . or paying any fees to the Commonwealth.

Wahl claims the *rights* afforded in Virginia to UM Coverage for one whose vehicle is "principally garaged or used" in Virginia, but Wahl refused to accept the *duties* imposed under Virginia law on one whose vehicle is "principally garaged or used" in Virginia.

This court finds that for a vehicle to be "principally garaged or used" in Virginia, as that term is used in Code § 38.2–2206, the vehicle, unless otherwise exempted, must be registered in Virginia and subject to personal property taxation according to Virginia state and local law on the date of the accident which generates the UM Coverage claim.

Wahl's vehicle was not, and accordingly she is not entitled to the UM Coverage she claims.

Moreover, pursuant to Article 34, § 3420, of the Code of New York,[3] automobile insurers are required to offer UM Coverage in an amount equal to liability coverage, as in Virginia. Unlike Virginia, however, an insured must affirmatively request such coverage, not specifically reject such coverage. The evidence is uncontradicted that Wahl was offered and did not request UM Coverage in accordance with New York law.

---

[2] Stafford County Code, §§ 15–21 to 15–60.

[3] of which a court may take judicial notice pursuant to the provisions of Virginia Code § 8.01–386.

Finally, the provisions of Code § 38.2–220(B), dealing with notice and specific rejection of UM Coverage, are applicable to a "new policy or premium notice . . . ." It is uncontradicted that the policy issued to Wahl for the period July 2, 1987, to January 2, 1988, was a renewal, not a new policy. *See, White v. National Union Fire Ins. Co.*, 914 F.2d 165, 169 (4th Cir. 1990), and the definition of "renewal" set forth in Code § 38.2–2212(A).

General Accident Insurance Company alleges that Wahl, at the time of the accident, "continued to reside in New York State . . ." as she declared on her original and renewal applications under the policy and argues that if she did not, she misrepresented her address and that misrepresentation was material to the risk.

Code § 38.2–309 (formerly code § 38.1–336) states:

> *When answers or statements of applicant do not bar recovery on policy.*—All statements, declarations and descriptions in any application for an insurance policy or for the reinstatement of an insurance policy shall be deemed representations and not warranties. No statement in an application or in any affidavit made before or after loss under the policy shall bar a recovery upon a policy of insurance unless it is clearly proved that such answer or statement was material to the risk when assumed and was untrue.

In *Harrell v. North Carolina Mut. Ins. Co.*, 215 Va. 829, 831, 213 S.E.2d 792, 794 (1975), the court stated:

> One of the purposes of Code § 38.1–336 is to relieve against the rigorous consequences of the common law rule that answers to questions in applications for insurance imply that the subject matter of the questions and answers is material, and that if such statements and answers are not true, the policy is voidable. *Sterling Insurance Company v. Dansey*, 195 Va. 933, 943, 81 S.E.2d 446, 451 (1954). Under the explicit mandate of the statute, the insurer had the burden of clearly proving that the insured's answers in her application were material to the risk assumed and were untrue. *Mutual of Omaha Insurance Company v. Echols' Adm'rs.*, 207 Va. 949, 952, 154 S.E.2d 169, 171 (1967). Materiality of a misrepresentation is an affirmative defense. *Hawkeye Security Insurance Company v. Government Employees Insurance*

*Company*, 207 Va. 944, 947, 154 S.E.2d 173, 175 (1967). Whether a representation is made and the terms on which it is made are questions for the trier of fact; but when, as here, a misrepresentation is proved, its materiality is a question of law for the court. *United States Fidelity and Guaranty Company v. Haywood*, 211 Va. 394, 396, 177 S.E.2d 530, 532 (1970); *Chitwood v. Prudential Insurance Company of America*, 206 Va. 314, 318, 143 S.E.2d 915, 918 (1965). "A fact is material to the risk to be assumed by an insurance company if the fact would reasonably influence the company's decision whether or not to issue a policy." *Mutual of Omaha v. Echols' Adm'rs., supra*, 207 Va. at 953–54, 154 S.E.2d at 172.

Nonetheless, an insurer is not required to prove that a misrepresentation was intertionally or fraudulently made if the misrepresentation is material. *Old Republic Life Insurance Co. v. Bales*, 213 Va. 771, 772, 195 S.E.2d 854, 856 (1973); *Scott v. State Farm Mutual*, 202 Va. 579, 582, 118 S.E.2d 519, 522 (1961); *McDaniel v. Hodges*, 176 Va. 519, 11 S.E.2d 623, 625 (1940); *In re Epic Mortg. Ins. Litigation*, 701 F. Supp. 1192, 1243 (E.D. Va. 1988), reversed on other grounds styled as *Foremost Guar. Corp. v. Meritor Savings Bank*, 910 F.2d 918 (4th Cir. 1990).

Each piece of evidence that Wahl marshals in support of her contention that her vehicle was principally garaged in Virginia correspondingly demonstrates the falseness of her declaration that her address was Box 211, Clayton, New York, on July 2, 1987, when she renewed the policy, or on October 18, 1987, when the accident occurred.

Wahl contends that she had advised the Cerow Agency she was living at 1033 Lakeview Drive, Stafford, Virginia, when she renewed the policy on July 2, 1987, and that knowledge should be imputed to the Cerow Agency's principal, defendant General Accident Insurance Company of America. Deanna LaLonde of Cerow specifically denies any such knowledge, and her testimony is supported by defendant's Exhibit 2, the August 25, 1988, letter to Ms. LaLonde. Therein, Wahl supplies her Virginia address as "1022 Lakeview Dr., Stafford, Virginia 22554." Had Cerow already known where Wahl lived, it would have been unnecessary for Wahl to give in her August 25, 1988, letter the Virginia address where she had, in fact, resided since September 11, 1987.

This court finds as a fact that on July 2, 1987, the declaration by Wahl that her address was "Box 211, Clayton, New York" was untrue, that it was untrue on October 18, 1987, and further, that the Cerow Agency was unaware of its falseness.

Was a true address material to the risk?

In *Buckeye Union Casualty Company v. Robertson*, 206 Va. 863, 866, 147 S.E.2d 94, 96 (1966), the Court concluded:

> In *Standard Accid. Ins. Co. v. Walker*, 127 Va. 140, 147, 102 S.E. 585, 587(1920), we said:

> "A fair test of the materiality of a fact is found in the answer to the question, whether reasonably careful and intelligent men would have regarded the fact communicated at the time of effecting the insurance as substantially increasing the chances of the loss insured against so as to bring about a rejection of the risk or charging an increased premium."

In *Chitwood v. Prudential, supra*, the court also noted that:

> In *Bankers Insurance Corporation v. Wheeler*, 203 Va. 434, 438, 125 S.E.2d 151, we quoted with approval from Vance, Law of Insurance (Anderson 3rd Ed. 1951) Section 62, page 376:

> "If the knowledge of a fact would cause the insurer to reject the risk, or to accept it only at a higher premium rate, that fact is material, though it may not even remotely contribute to the contingency upon which the insurer would become liable, or in any wise affect the risk."

206 Va. at 318–319. *See also, Utica Mutual v. National Indemnity*, 210 Va. 769, 173 S.E.2d 855 (1970); *U.S. F. & G. v. Haywood*, 211 Va. 394, 177 S.E.2d 530 (1970).

The insured's true address is of import to both the insured and the insurer. For example, a notice of cancellation or refusal to renew is to be sent to the "address of the insured stated in the policy . . ." Code § 38.2–2208(A)(1)(b), and the procedure for such a notice requires mailing to the "address shown in the policy . . ." Code § 38.2–2212(C)(1)(p) and § 38.2–2212(E). Likewise, the cancellation provisions of Wahl's policy recite the insurer may cancel by mailing a notice "to the named insured . . . at the address shown in this policy . . . ." (Pl. Ex. C, p. 10).

And upon compliance with the mailing provisions, cancellation (or refusal to renew) is completed, whether the insured actually re-

ceives the notice or not. *Ampy v. Insurance Co.*, 200 Va. 396, 401, 105 S.E.2d 839, 843 (1958); *Riddick v. State Capital Ins. Co.*, 271 F.2d 641 (4th Cir. 1959).

In *North River Ins. Co. v. Lewis*, 137 Va. 322, 324, 119 S.E.43, 44 (1923), the Supreme Court held an insurance company was estopped from denying automobile insurance coverage where the company's general agent advised the insured that he, the agent, had all the information necessary to fill out the insurance application, and the general agent, unknown to the insured, and despite knowing the true facts, purposely wrote false information material to the risk in the application.

> The (assured) was known by the agent to be visiting friends in Keokuk and that his stay there would be temporary . . . (and the agent knew that the vehicle) . . . was only to be kept in the garage at Keokuk until the assured concluded his visit there, (and) was then (to be) brought to Roanoke, Va., where it was kept by the assured and used by him for pleasure, and in connection with his business . . . .

Despite this knowledge, the agent wrote in the application that the vehicle was:

> usually kept in a private garage located at No. 326 South Eight Street, Keokuk, Iowa.

The Court included in its recital of misrepresentations material to the risk the location where the vehicle was principally garaged and noted that "the rates in the West at Keokuk are lower than in the East at Roanoke." See cases collected at 7 Am. Jur. 2d, *Automobile Insurance*, § 81, pp. 548–549.

The question as to the materiality of a misrepresentation is one of law for the court to determine. *United States Fidelity and Guaranty Company v. Haywood*, 221 Va. 394, 396, 177 S.E.2d 530, 532 (1970). There is no evidence but that the Cerow Agency was without authority to issue or renew the policy, if they had known Wahl was living in Virginia where her vehicle was principally garaged and used. If Wahl maintained the Cerow Agency had such authority, the burden was upon her to prove that authority by a preponderance of the evidence. *See, Insurance Co. v. Dixon*, 206 Va. 568, 572–573, 145 S.E.2d 187, 190 (1965).

This court concludes that Wahl's misrepresentation in the Declarations of the policy that her address was in New York was material to the risk.

In *Inter-Ocean Ins. Co. v. Harkrader*, 193 Va. 96, 100, 67 S.E.2d 894, 897(1951), the Virginia Supreme Court stated:

> Representations in an application for a policy of insurance should not only be true but full. The insurer has the right to know the whole truth. If a true disclosure is made, it is put on guard to make its own inquiries and determine whether or not the risk should be assumed. A misstatement of material facts by the applicant takes away its opportunity to estimate the risk under its contract. A knowledge or ignorance of such facts would naturally and reasonably influence the judgment of the insurer in making the contract or in establishing the degree of character of the risk or in fixing the rate of premiums.

Judgment is entered in favor of defendants.