**CAROLINA CASUALTY INS. CO. Plaintiff,**

v.

**DRAPER & GOLDBERG, PLLC, Defendant.**

No. 1:03CV1346JCC.

United States District Court, E.D. Virginia, Alexandria Division.

Sept. 9, 2004.

*See also* 369 F.Supp.2d 667, 2004 WL 3331335.

Richard Albert Simpson, Ross Dixon & Bell LLP, William J. Carter, Carr Maloney PC, Washington, DC, for Plaintiff.

Christine Michele McAnney, Venable LLP, Vienna, VA, for Defendant.

## MEMORANDUM OPINION

CACHERIS, District Judge.

This matter comes before the Court on Cross–Motions for Summary Judgment. For the reasons stated below, the Court will grant Defendant's motion and deny Plaintiff's motion.

### I. Background

Plaintiff Carolina Casualty Company ("Carolina") is an insurance company. It filed suit on October 23, 2003 for rescission of a professional liability insurance policy it issued to the Defendant law firm, Draper & Goldberg, PLLC ("D & G"). D & G is a law firm that specializes in residential foreclosures. As such, the firm and its lawyers are routinely named as defendants in ground rent suits, tax sale suits, and quiet title suits. These types of suits are filed against attorneys and non-attorneys alike. Carolina is a Florida corporation with its principal place of business in Florida. D & G is a Virginia corporation with its principal place of business in a state other than Florida.[1]

On December 23, 2002, D & G applied for professional liability insurance coverage from Carolina. In the application, Question 16 asked:

> Has any professional liability claim been made against the Applicant Firm, or any predecessor in business, or any of the past or present lawyers in the firm, during the past five (5) years?

(Pl.'s Mot. Summ. J., Ex. 1 at 3.) D & G answered this question in the affirmative. (*Id.*) Question 17 asked:

> After inquiry, does the Applicant Firm or any lawyer in the Applicant Firm

---

1. Subject matter jurisdiction exists in this case under 28 U.S.C. § 1132.

know of any circumstances, acts, errors or omissions that could result in a professional liability claim against the Applicant Firm or any predecessor in business, or any of the past or present lawyers in the Applicant Firm?

(*Id.*) D & G answered "No" to this question. (*Id.*) Having responded "Yes" to Question 16, D & G attached to its application five Claim/Incident Supplemental Forms. (Pl.'s Mot. Summ. J.; Ex. 2.) In these forms, D & G identified four[2] professional liability claims or suits during the last five years, in accordance with the information requested in Question 16.

The claims identified involved Marshall Meredith, Margaret Boone, Nector Projects, Inc., and Lewis Page. (*Id.*) Regarding the first claim, D & G reported that Marshall Meredith had "sued to enforce a foreclosure sale that was called, however it was discovered that client had cancelled the sale prior to the sale occurring." (*Id.* at 1.) The next claim, made by Margaret Boone, involved a "[f]oreclosure notice sent to borrower by firm. Borrower claimed that notice violated Fair Debt Act." (*Id.* at 3.) The claim filed by Nector Projects concerned a "[c]laim of defamation with respect to mutual clients." (*Id.* at 5.) The final claim within the reporting period was made by Lewis Page; the claim arose out of an "[i]nadvertantly filed incorrect amount [sic] of debt on a foreclosure thereby creating an 'artificial' surplus for a junior lienholder." (*Id.* at 7.)

Immediately above the signature line, the Application stated:

> The undersigned, acting on behalf of the Applicant Firm and all persons proposed for this insurance, represents that all statements on or attached to this Proposal Form are true. The undersigned agrees that if any of the information supplied changes between the date of the Proposal Form and the effective date of the Policy applied for, the undersigned will immediately notify the insurer of such changes. In that event, the insurer shall have the right to withdraw or modify any outstanding quotation and/or authorization or agreement to bind the insurance.

(*Id.*)

On the basis of the Defendant's application, Carolina issued a policy to D & G for the period of December 20, 2002 to December 20, 2003. (Pl.'s Mot. Summ. J., Ex. 6, 15.) The underwriter manager responsible for evaluating the application on behalf of Carolina was Timothy Esbolt from Monitor Liability Managers, ("Monitor"). Section VIII of the policy provided:

> The Proposal [the application] is the basis of this Policy and is incorporated in and constitutes a part of the Policy. A copy of the Proposal Form is attached hereto. Any materials submitted with the Proposal Form shall be maintained on file with the insurer and shall be deemed to be attached hereto, as if physically attached. It is agreed by the Insured that the statements in the Proposal are their representations, that they are material and that this Policy is issued in reliance upon the truth of such representations.

(*Id.*)

In May and June of 2003, three parties asserted claims against D & G for liability. The first law suit, captioned *Patricia Weddle v. Option One Mortgage, et al.*, was filed in connection with a bankruptcy pro-

---

**2.** D & G actually listed five previous claims, but only four occurred during the five-year reporting period. D & G listed a claim by Specialized, Inc. of Virginia that was made on December 5, 1997 which was more than five years before the date of the application. (*See* Pl.'s Mot. Summ. J., Ex: 2.)

ceeding. (Pl.'s Mot. Summ. J., Ex. 7.) In this action, Weddle alleged, among other things, that D & G violated the Fair Debt Collection Practices Act, breached its fiduciary duty, and charged excessive fees. On May 22, 2003, counsel for D & G informed Monitor that Option One Mortgage Corporation had asserted a claim against D & G. (Pl.'s Mot. Summ. J., Ex. 8.) No lawsuit has been filed in connection with the claim by Option One.

The second lawsuit is captioned *Dave Shorb et al. v. Option One Mortgage Corp., et al.* (Pl.'s Mot. Summ. J., Ex. 10.) This matter is pending in the Circuit Court for Frederick County, Maryland. In that matter, four plaintiffs filed claims on their own behalf and sought class certification as representatives of a purported class concerning similar allegations against D & G as in the *Weddle* case. Both the *Weddle* and *Shorb* suits were class actions alleging damages exceeding $1,000,000. (Def.'s Mot. Summ. J. at 3.)

As a result of its investigations into these claims, Monitor, on behalf of Carolina, discovered 24 other lawsuits filed in the five years prior to the issuance of the policy. Carolina claims that had it known of these lawsuits it never would have issued the policy. After learning of these 24 actions, Monitor contacted D & G on September 11, 2003 and requested an explanation regarding its failure to report. (Pl.'s Mot. Summ. J., Ex. 12.) On September 22, 2003, counsel for D & G responded stating that the firm had not reported these lawsuits because the application form did not define the term "professional liability claim" which appeared in Question 16. (Pl.'s Mot. Summ. J., Ex. 13.) In a subsequent letter, D & G elaborated on its position:

> We have explained D & G's subjective understanding of the scope of Question 16. The cases previously listed by D & G [in the application for insurance] were cases which it felt it needed to be reported to the carrier(s) for the carrier(s) to handle. In contrast, the claims set forth in the cases you have listed did not rise to level where D & G felt it necessary to have the carrier(s) assume responsibility for the case.

(Pl.'s Mot. Summ. J., Ex. 14.)

Sometime after April 28, 2004, Carolina discovered that D & G had actually failed to disclose not 24 additional lawsuits, but "approximately 500 additional lawsuits." (Pl.'s Renewed Mot. Summ. J. at 5.)

Carolina seeks rescission of the policy it issued D & G, because of the misrepresentations by D & G concerning the number of lawsuits against it in the prior five years.

In its Answer to the Complaint, D & G asserted a counterclaim against Carolina. The Counterclaim asked for a declaratory judgment stating that: (1) there is no legal basis for rescission of the policy; (2) D & G is entitled to the benefit of the extended reporting period provided by the policy;[3] and (3) D & G is entitled to legal fees and litigation expenses incurred in having to defend against the Complaint. On April 5, 2004, the Court denied the Carolina's Motion to Dismiss the D & G's Counterclaim.

On April 28, 2004, Carolina filed a Motion for Summary Judgment based on the 24 undisclosed lawsuits filed against D & G

---

**3.** The Policy provided for an unlimited extended reporting period in exchange for a payment of 0 of the annual premium due within 30 days of the effective date of any non-renewal of the Policy by Carolina. (Counter.¶ 4.) D & G purchased the extended reporting period under the Policy for any other claims first made and reported after the expiration of the Policy, regarding any wrongful acts occurring prior to the end of the Policy. (Counter.¶ 11.)

within the five-year period. On June 15, 2004, the Court denied the Carolina's Motion for Summary Judgment without prejudice.

On July 30, 2004, Carolina filed a Renewed Motion for Summary Judgment based on the approximately 500 undisclosed lawsuits filed against D & G within the five-year period. On August 5, 2004, D & G filed its own Motion for Summary Judgment. In light of the undisputed facts in this case, D & G has clearly shown that its response to Question 16 was true. Accordingly, the Court will grant summary judgment to the Defendant for the reasons stated below.

## II. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party opposing summary judgment may not rest upon mere allegations or denials; a "mere scintilla" of evidence is insufficient to overcome summary judgment. *Anderson,* 477 U.S. at 248–52, 106 S.Ct. 2505. A genuine issue exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the nonmoving party. See *id.* at 255, 106 S.Ct. 2505. Unsupported speculation is not enough to withstand a motion for summary judgment. See *Ash v. United Parcel Serv., Inc.,* 800 F.2d 409, 411–12 (4th Cir.1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. When a motion for summary judgment is made, the evidence presented must always be construed in the light most favorable to the nonmoving party. See *Smith v. Va. Commonwealth Univ.,* 84 F.3d 672, 675 (4th Cir.1996)(en banc).

Summary judgment is especially appropriate in this case because the construction of insurance contracts is a legal question well suited for resolution by the court. *St. Paul Fire and Marine Ins. Co. v. Jacobson,* 826 F.Supp. 155, 157 (E.D.Va.1993), *aff'd* 48 F.3d 778 (4th Cir.1995).

The Court must determine the validity of Carolina's rescission claim. Specifically, Carolina contends that D & G's application contained materially false representations that permit rescission of the policy.

 Under Virginia law, an insurer may rescind an insurance policy because of misrepresentations in the insurance application only in certain circumstances.[4] *Ja-*

---

4. Virginia law governs this case. Under the well-settled rule in *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), federal courts must apply the choice of law rules of the forum state in diversity cases. Absent an express contract provision to the contrary, disputes in Virginia concerning the interpretation of a contract

*cobson,* 48 F.3d at 781. Virginia Code § 38.2–309 provides in pertinent part:

> No statement in an application or in any affidavit made before or after loss under the policy shall bar a recovery upon a policy of insurance unless it is clearly proved that such answer or statement was material to the risk when assumed and was untrue.

Rescission of the Carolina policy is therefore appropriate only if Carolina clearly proves that an answer or statement in D & G's application for insurance was both (1) material to the risk assumed and (2) untrue. *Jacobson,* 826 F.Supp. at 159. Whether a representation is made and the terms on which it is made are questions of fact for the jury; but, when proved, its materiality is a question for the court. *Chitwood v. Prudential Ins. Co. of America,* 206 Va. 314, 143 S.E.2d 915, 918 (1965).

### III. Analysis

The issue presented is whether the phrase "professional liability claim" in Question 16 of the application required the disclosure of only claims made by clients of D & G or of all suits against the firm and lawyers arising out of their practice of law. If "professional liability claim" was limited to claims made by clients of D & G, then D & G's representations on the application were true, and Carolina cannot rescind the insurance policy. However, if "professional liability claim" included all suits against D & G and D & G lawyers arising out of their practice of law, then D & G's representations on the application were untrue, and Carolina may rescind the policy if the representations were also material.

■ An insurer is entitled to receive truthful and full representations from prospective insureds. *Parkerson v. Federal Home Life Ins. Co.,* 797 F.Supp. 1308, 1315 (E.D.Va.1992) (citing *Mutual of Omaha Ins. Co. v. Echols,* 207 Va. 949, 154 S.E.2d 169, 172 (1967)). Under Virginia law, an insured has no affirmative duty to volunteer information; rather, an insured is only required to disclose information that is asked of him. *Jacobson,* 48 F.3d at 780–781 (citing *Greensboro Nat'l Life Ins. Co. v. Southside Bank,* 206 Va. 263, 142 S.E.2d 551, 555 (1965)). "Representations in an application for a policy of insurance should not only be true but full. The insurer has the right to know the whole truth. If a true disclosure is made, it is put on guard to make its own inquiries, and determine whether or not the risk should be assumed." *Mutual of Omaha Ins. Co. v. Dingus,* 219 Va. 706, 250 S.E.2d 352, 355–356 (1979) (citing *Chitwood,* 143 S.E.2d at 918).

It is usually not necessary, under the Virginia statute, for an insurer to establish that an untrue representation was willfully false or fraudulently made. *Parkerson v. Federal Home Life Ins. Co.,* 797 F.Supp. 1308, 1315 (E.D.Va.1992) (citing *Chitwood,* 143 S.E.2d at 918). Although whether a statement is true or not is a question of fact reserved for determination by the jury, where the record shows clearly that the insured gave statements that were not true and correct, the Supreme Court of Virginia has held that a trial court errs in submitting that question to the jury.

are governed by the law of the place where the contract was made. *C.I.T. Corp. v. Guy,* 170 Va. 16, 195 S.E. 659 (1938). Since the Carolina policy at issue was made in Virginia and contains no express choice of law provisions, Virginia law applies to its construction. The policy clearly contemplates the applica-

tion of Virginia law, because it includes a Virginia Amendatory Endorsement, which provides information as to the Virginia governmental agency for the insured to contact with questions or complaints. (Pl.'s Mot. Summ. J., Ex. 6.)

*Echols,* 154 S.E.2d at 172 (*cited in Parkerson,* 797 F.Supp. at 1315).

■ Under Virginia law:

If the language of an insurance policy is unambiguous, we will give the words their ordinary meaning and enforce the policy as written. On the other hand, because the principal purpose of insurance is protection and insurance policies are drafted by insurance companies, if the language of a policy is capable of different interpretations, we will construe it in favor of coverage or indemnity and against a limitation of coverage.

*America Online, Inc. v. St. Paul Mercury Ins. Co.,* 347 F.3d 89, 93 (4th Cir.2003) (quoting *United Servs. Auto. Ass'n v. Webb,* 235 Va. 655, 369 S.E.2d 196, 198 (1988)). To determine the ordinary construction of a word, courts often look to dictionary definitions. *Highway Express, Inc. v. Fed. Ins. Co.,* 19 F.3d 1429, 1994 WL 95956 at *4 (4th Cir.1994) (citing *Hill v. State Farm Mut. Auto. Ins. Co.,* 237 Va. 148, 375 S.E.2d 727, 729 (1989)). However, if language is ambiguous, Virginia adheres to the canon of construction that ambiguous terms in insurance agreements are construed against the insurer.

■ D & G contends that none of the undisclosed lawsuits fall within the ambit of Question 16, because none involved complaints by clients for the rendering of legal advice. Carolina disputes this interpretation, arguing that Question 16 involved all lawsuits against the firm arising out of its practice of law whether or not made by clients. Carolina also argues that D & G's alleged interpretation of Question 16 is inconsistent with the five suits it did disclose to Carolina, which included claims by non-clients. D & G responds that it was not required to disclose those five suits and that the information it disclosed is irrelevant to determining the meaning of Question 16.

The threshold issue is which claims fell within the ambit of Question 16. This depends on whether the disputed policy language in Question 16, "professional liability claim," is ambiguous.

One dictionary defines the adjective "professional" as "of, relating to, engaged in, or suitable for a profession: *a professional field such as law.*" American Heritage Dictionary 1446 (3rd ed.1992) (quotations in original). The same dictionary defines "lawyer" as "one whose profession is to give legal advice and assistance *to clients* and represent them in court or in other legal matters." *Id.* at 1021 (emphasis added).

■ "Professional liability claim" has been interpreted to mean claims resulting from a breach of professional duty. See *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.,* 264 F.3d 302, 307 (3rd Cir.2001) ("When an attorney has a basis to believe he has breached a professional duty, he has a reason to foresee that his conduct might be the basis of a professional liability claim against him.") Absent privity of contract, Virginia law does not recognize a negligence cause of action solely seeking recovery for economic losses against a professional. *See e.g., Copenhaver v. Rogers,* 238 Va. 361, 384 S.E.2d 593, 595 (1989) (beneficiaries of a will have no cause of action for professional negligence against the attorney who drafted the will); *Cf. Blake Constr. Co. v. Alley,* 233 Va. 31, 353 S.E.2d 724, 727 (1987) (general contractor has no cause of action for economic loss caused by architecture firm's alleged negligence absent privity of contract).

Finally, in *Guidry v. Garrett,* 591 So.2d 806 (1992), the court ruled that an insurance policy that provided coverage "for professional liability claims," did not cover a doctor's bad acts toward a person who was not a patient. The court ruled that to

constitute a professional liability or malpractice claim, the professional services had to be rendered to a patient.

The Court finds "professional liability claim" to be unambiguous. A "lawyer" is defined as someone who gives legal advice and assistance to clients and represent clients in court or in other legal matters. "Professional liability claim" has been interpreted to mean claims resulting from a breach of professional duty, but in Virginia, an attorney owes a duty to those only with whom he is in privity of contract, i.e. his clients. Finally, the court in *Guidry* ruled that a malpractice claim against a doctor by a non-patient was not a "professional liability claim." Accordingly, "professional liability claim" unambiguously means negligence claims alleged against an attorney by his clients. D & G was not required to disclose claims filed against them by non-clients, so its disclosures were true.

However, even if "professional liability claim" was ambiguous, the Court would reach the same result. Virginia applies the rule that if the language of a policy is capable of different interpretations, it is ambiguous and construed in favor of coverage. *America Online, Inc.*, 347 F.3d at 93. If "professional liability claim" is ambiguous, the Court construes it against the Carolina Casualty.

The facts of this case are analogous to the facts in *Jacobson*, 48 F.3d 778. In that case, the Fourth Circuit affirmed Judge Ellis' ruling that the word "activities" in a question on an insurance application was unambiguous. The question asked whether Jacobson, a physician seeking professional liability insurance, had knowledge of "any pending claim or activities (including request for medical records) that might give rise to a claim in the future." *Id.* at 781.

Jacobson's interpretation was that "activities" only applied to "activities of third persons," while the insurance company argued that "activities" covered Jacobson's activities as well. The insurance company was seeking rescission of the policy based on Jacobson's failure to disclose his own activities that might have given rise to a claim against him. The Fourth Circuit held that "activities" was unambiguous and, consistent with Jacobson's interpretation, covered only activities of third persons.

The Fourth Circuit then explained that even if "activities" was ambiguous, Virginia law requires ambiguous terms to be construed in favor of coverage, so "activities" would still only cover activities by third persons. Moreover, the Fourth Circuit held that common sense dictated that Jacobson's interpretation of the question was correct, because otherwise:

> an applicant physician would have to list almost all of his activities in providing medical services, since arguably each of a physician's activities in treating his patients as he provides medical care could give rise to a future claim. [The Fourth Circuit could not] accept that [Plaintiff] intended to compel such information when it would impose a substantial burden on an applicant and be of little value in computing true risk for the company. If [Plaintiff] truly [desires] such detailed information it [must] request it more clearly.

*Id.*

The Fourth Circuit's reasoning applies here. D & G is a law firm that specializes in residential foreclosures. As such, "the firm and its lawyers routinely are named as pro forma defendants in ground rent suits, tax sale suits, and quiet title suits." Def.'s Mot. Summ. J. at 2. D & G states that the 500 undisclosed lawsuits filed against D & G within the five-year period

were filed "by third parties who had no professional relationship with the firm, who did not file lawsuits based on legal services they obtained from the firm, but instead because D & G or its lawyers filled the role of substitute trustee in various real estate transactions." *Id.* at 10. Accordingly, these 500 other lawsuits, although numerous, could be of little value in computing true risk for D & G and would impose a substantial burden on D & G to disclose them all.

Carolina cannot argue that "professional liability claim" unambiguously covered all 500 claims because it admitted that the term is susceptible of more than one interpretation when it stated, "[t]he five claims reported by D & G in response to Question 16 are not all *classic 'professional liability' claims as the term may be conservatively interpreted.*" Pl.'s Mot. Summ. J. at 11.

Finally, Carolina's argument that D & G's interpretation of Question 16 is inconsistent with the five suits it did disclose to Carolina is easily disposed of. Under Virginia law, an insured has no affirmative duty to volunteer information; rather, an insured is only required to disclose information that is asked of him. *Jacobson,* 48 F.3d at 780–781 (citing *Greensboro Nat'l Life Ins. Co. v. Southside Bank,* 206 Va. 263, 142 S.E.2d 551, 555 (1965)). Since the Court has determined that Question 16 unambiguously did not cover claims made against D & G by non-clients, D & G was not required to disclose those claims. The claims that D & G did disclose are irrelevant to determining the meaning of Question 16.

Accordingly, this Court finds "professional liability claim" is unambiguous and covers only claims made by clients. Question 16 did not cover claims made against D & G by non-clients, so D & G was under no duty to disclose the 500 other claims. Since D & G was under no

duty to disclose them, its answers were true, and rescission of the policy is denied.

## IV. Conclusion

For the foregoing reasons, the Court holds that Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order will issue.