**Jeanne AHMANN, Personal Representative of the Estate of Allen J. Ahmann Plaintiff and Appellant,**

v.

**THE MINNESOTA MUTUAL LIFE INSURANCE COMPANY, Respondent—Appellee.**

No. 02–35607.

D.C. No. CV–96–59–H–CSO.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 2003.

Decided Dec. 17, 2003.

Curtis G. Thompson, Esq., Thompson Potts & Donovan, P.C., Great Falls, MT, Kristi Blazer, Esq., Missouri River Law Office, Craig, MT, for Plaintiff–Appellant.

James L. Jones, Esq., Holland & Hart LLP, Billings, MT, for Defendant–Appellee.

Before BROWNING, ALARCÓN, and CLIFTON, Circuit Judges.

## MEMORANDUM *

The Estate of Allen J. Ahmann appeals the grant of summary judgment to Minnesota Mutual Life Insurance Company ("MML"). Ahmann claims that MML's rescission of a disability insurance policy was a breach of contract, violated the Unfair Claims Settlement Practices Act, and amounted to fraud. Because Ahmann has raised a genuine issue of material fact as to whether MML had actual and inquiry notice of his back condition, we RE-VERSE and REMAND to the district court.

This court reviews a grant of summary judgment *de novo*. *United States v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir. 2003). Because this is a diversity case, we apply Montana substantive law. *Commonwealth Utils. Co. v. Goltens Trading & Eng'g PTE, Ltd.*, 313 F.3d 541, 546 (9th Cir.2002). Montana law also determines whether a fact issue is material, *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.2000), but we apply the federal standard to measure the sufficiency of the evidence to raise a fact question. *Bieghler v. Kleppe*, 633 F.2d 531, 533 (9th Cir.1980). We affirm only if the district court correctly applied the relevant substantive law, and if there are no genuine issues of material fact, viewing the evidence in the light most favorable to the nonmoving party. *City of Tacoma*, 332 F.3d at 578. "[W]e review the record as a whole and draw all reasonable inferences" in favor of the nonmoving party. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir.2003).

## I.

Certain facts are not in dispute. In mid–1994, Ahmann applied for a life insurance policy and a disability insurance (DI) policy through MML's agent, Leonard Landa. MML collected underwriting information from Ahmann at that time through a standard medical questionnaire and a paramedic exam. MML used the collected medical information in underwriting both the life insurance and DI policies. Ahmann accepted the life insurance policy but turned down the DI policy for financial reasons. In late 1994, Ahmann strained his back and saw his doctor on several occasions for treatment. Ahmann and

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Landa met again on February 15, 1995 and Ahmann decided to take out a DI policy with MML. What transpired at this meeting is in some dispute, but the parties agree that Ahmann signed a DI application form and paid Landa $2,920 for the first premium. The parties met again on March 23, 1995 and Ahmann signed an Amendment of Application form, which stated that he had not experienced a change in health or visited a doctor since the parties' February 1995 meeting.

On March 31, 1995, Ahmann was diagnosed with possible Parkinson's disease, a diagnosis that was subsequently confirmed. Ahmann made a claim on his policy in October 1995. In response, MML notified Ahmann that it would review both the claim and Ahmann's DI application materials. On February 29, 1996, MML rescinded Ahmann's policy, claiming that Ahmann had made material misrepresentations in his 1995 DI application.[1] Ahmann died before the instant litigation began.

## II.

The parties' central dispute concerns the February 1995 meeting. MML claims that Ahmann made material misrepresentations at this meeting concerning his recent history of back pain and related doctor consultations. It claims that these misrepresentations are reflected in the 1995 DI application form. That form asked whether the applicant had experienced back problems, to which the answer "no" was checked. The form also asked for the names of all doctors that had been consulted in the past five years, but Ahmann's 1994 doctor consultations were not listed. Ahmann's family claims that Landa filled out the application form and that Landa had notice of Ahmann's back injuries and their severity. They therefore argue that Ahmann was not responsible for these misrepresentations and omissions.

Judging the evidence in a light most favorable to Ahmann, we find that there is a genuine issue of material fact as to whether Landa asked Ahmann either the specific questions contained on the medical portion of the DI application or more general questions about changes to his health or recent doctor visits when the two met in February 1995. Landa's testimony on the February 1995 meeting was contradictory. Landa testified in deposition that he had not asked the specific medical questions included in the DI application at the February 1995 meeting. Although Landa could not recall what specific questions he asked at that meeting, he testified that because underwriting information was already on file, he "would have" asked only whether Ahmann had experienced changes in his health or had seen a doctor in the period between completing the 1994 medical questionnaire and the present application. However, Landa later recanted his deposition testimony, stating in an affidavit that he had completed a new health questionnaire with Ahmann at the February 1995 meeting.

Other evidence supports an inference that Landa and Ahmann did not complete a new medical application at the February 1995 meeting and that Ahmann certified that portion of the application while it was still blank. The record shows that Landa had previously had Ahmann sign a policy document that was blank. On July 29, 1994, Ahmann signed and Landa witnessed

---

1. In its rescission letter, MML cited a long list of alleged misrepresentations and omissions by Ahmann, including the doctor consultations for back pain in 1994, consultations for hip pain in 1990, occasional chest pain, and Ahmann's statements on when his Parkinson's symptoms began to appear. However, because MML conceded at the district court that it was seeking rescission based on the back injury misrepresentations alone, only those alleged misrepresentations are considered in this appeal.

a blank Amendment of Application form on Ahmann's life insurance policy. That form contained questions asking whether Ahmann had experienced any change in health or consulted any doctor since he applied for the policy on May 25, 1994. Although the "Policy Delivery Instructions" that accompany MML's Amendment of Application forms require that the agent obtain answers to these questions before issuing the policy, the parties signed the form with the questions unanswered.

Furthermore, on the "Remarks" section of the 1995 application form, Landa wrote: "Applicant now wants to go ahead with DI policy. You have complete underwriting information in home office." Landa's note to MML on the application form suggests that Landa did not feel it necessary to fill out a new medical application at the February 1995 meeting, since underwriting information from Ahmann's 1994 medical questionnaire was already on file.

The form of the answers provided on the 1995 application also supports an inference that the answers were copied from the 1994 medical questionnaire and were not filled in at the February 1995 meeting. The answers to several questions on pages 7 and 8 of the 1995 DI application are in the handwriting of Landa's assistant, Lynne Tyack. Tyack testified that she called Ahmann sometime after the February 1995 meeting to get the answers to these questions. The questions relate to the age and health of Ahmann's parents, Ahmann's height and weight, and the name of Ahmann's personal physician. The answers that Tyack filled in were to questions that could not be answered by referencing the 1994 medical questionnaire, since these questions were not included on that form. MML has offered no explanation for why these relatively simple questions would not have been answered at the February 1995 meeting had Landa actually asked them. Nor has MML of-fered an explanation for why Landa would have skipped these questions, which were in the middle of the application form, had he filled out a new DI application with Ahmann. Finally, although Landa had not conducted the 1994 medical questionnaire interview, his written answers on the 1995 application mirror the idiosyncracies of the earlier answers. Landa abbreviated the forename of Ahmann's doctor to "Wm." and used both "Dr." and "MD" to describe his title, indicating that these answers were copied from the 1994 medical questionnaire.

There is also a genuine issue of material fact as to whether Landa asked about recent changes in Ahmann's health or additional doctor consultations when the two met on February 15, 1995. The only evidence that Landa asked Ahmann these more general questions at the February 1995 meeting came from Landa's deposition testimony, in which Landa stated that he "would have" asked these questions. However, Landa himself rebutted this testimony in his affidavit. Ahmann is entitled to have a jury determine whether Landa filled out a new application at the meeting, asked only general questions about Ahmann's health since his previous application, or did neither.

### III.

In rescinding Ahmann's DI policy, MML relied on Mont.Code Ann. § 33–15–403(2) (2002), which provides that:

> Misrepresentations, omissions, concealment of facts, and incorrect statements do not prevent a recovery under the policy or contract unless:
>
> . . .
>
> (b) material either to the acceptance of the risk or to the hazard assumed by the insurer. . . .

MML has established that the back injury and doctor consultations not reflected on

the 1995 DI application were material to its decision to insure Ahmann. In Montana, the materiality of a misrepresentation is conclusively established where the insurer includes an inquiry about the condition in its application questionnaire. *Schlemmer v. North Central Life Ins. Co.,* 307 Mont. 203, 37 P.3d 63, 65 (2001). Ahmann certified that he had read the questions contained in the 1995 application, but did not inform Landa that he had consulted with a doctor for back pain in late 1994. Even if he signed a blank application and relied on Landa to fill in the answers, Ahmann may not avoid responsibility for the misrepresentations contained on the form. *See Schlemmer,* 37 P.3d at 65.

However, Ahmann is entitled to a jury determination on whether MML is estopped from rescinding the DI policy based on MML's actual and inquiry notice of Ahmann's back injury. It is undisputed that Landa was aware of Ahmann's back injury. Landa's actual knowledge of the back injury is imputed to MML and MML is estopped from rescinding the policy based on the omission of Ahmann's back strain from the application. *See* Mont. Code Ann. § 28–10–604 (2002); *Webber v. Mass. Bonding & Ins. Co.,* 81 Mont. 351, 263 P. 101, 104 (1928).

Furthermore, Landa's knowledge of Ahmann's back strain may have put Landa, and thus MML, on inquiry notice of Ahmann's 1994 doctor visits. Under the theory of inquiry notice "an insurance policy is not avoided if the insurer ... has sufficient indications that would put a prudent person on notice so as to induce inquiry which, if done with reasonable thoroughness, would reveal the truth." *Steinback v. Bankers Life & Cas. Co.,* 302 Mont. 483, 15 P.3d 872, 874 (2000); *see also* Mont. Code Ann. § 1–1–217(2) (2002). MML's underwriters testified extensively to the serious nature of back injuries in making underwriting determinations. A jury could find that a prudent person in Landa's position would have made further inquiries regarding the nature and extent of Ahmann's back injury, for example, by requiring Ahmann to fill out a new DI application at their February 1995 meeting. Landa also had the name of Ahmann's treating physician and Ahmann had signed a medical release allowing MML's underwriters to access his medical records. Thus, a jury could conclude that a reasonably thorough inquiry would have revealed Ahmann's doctor consultations in late 1994.

MML contends that Ahmann's inquiry notice claim is barred by the Montana Supreme Court's decision in *Steinback v. Bankers Life & Cas. Co.* In that case, the Montana Supreme Court held that the doctrine of inquiry notice did not estop an insurer from rescinding a policy where its agent asked the insured a "clear and unambiguous question" about a medical condition and the insured provided a false answer. *Steinback,* 15 P.3d at 876. A reasonable jury could find, however, that Landa neither went over the specific questions contained in the DI application nor asked more general questions about additional doctor consultations when he met with Ahmann in February 1995. Ahmann's general certification of the application under these circumstances would not constitute a response to a clear and unambiguous question regarding a medical condition.

The district court granted MML summary judgment on Ahmann's remaining claims based entirely on its grant of summary judgment on the breach of contract claim. Therefore, we REVERSE summary judgment on all of Ahmann's claims and REMAND.

**REVERSED AND REMANDED**