Justice Jim Rice, concurring in part and dissenting in part.
¶ 43 The Court overturns 50 years of Montana judicial precedent, holds contrary to uniform national jurisprudence, adopts a position argued by no party, and for which it cites no supportive authority, to conclude that § 33-15-403, MCA, does not provide for rescission of an insurance contract. Further, the Court's opinion erroneously denies ALPS their common law and statutory right to rescind. I dissent.
*663 ¶ 44 I compliment the District Court on its lengthy and scholarly analysis of the issue of insurance contract rescission, which I am grateful to draw upon here. The District Court discussed at length the genesis of both the reasonable expectation doctrine and § 33-15-403, MCA, which it referred to as Montana's "warranty amelioration statute." The reasonable expectation doctrine is traced to the esteemed work of Professor, and later Federal Judge, Robert E. Keeton, who authored the two-part article, Insurance Law Rights at Variance with Policy Provisions , 83 Harv. L. Rev. 961 (1970), to which this Court first ***254 cited in Transamerica Ins. Co. v. Royle , 202 Mont. 173, 180, 656 P.2d 820, 824 (1983), in support of our adoption of the doctrine. The Montana Legislature's 1959 enactment of what is now § 33-15-403, MCA, was part of a national trend identified by Keeton intended to legislatively counter or ameliorate what he described as the "rigorous" common law of warranties, which, in the insurance context, referred to "condition[s] of the insurer's promise to pay." Robert E. Keeton, Insurance Law Rights at Variance with Policy Provisions: Part Two , 83 Harv. L. Rev. 1281, 1281 (1970). Under the common law of warranties, any incorrect statement, no matter how trivial, made by an insured on an application, if construed as a warranty, "was a complete defense for the insurer regardless of materiality of the 'breach,' " leading to unconscionable outcomes inconsistent with the consumer's reasonable expectations, which the legislation sought to counter. Keeton, supra , at 1281-1291 ; see also Vlastos v. Sumitomo Marine & Fire Ins. Co. , 707 F.2d 775, 777 (3d Cir. 1983) ; Beckman v. Nat'l Council, K. L. S. , 61 Mont. 512, 517, 204 P. 487, 488 (1921) ; Mandoli v. Nat'l Council of Knights & Ladies of Sec. , 58 Mont. 671, 677, 194 P. 493, 494 (1920). The legislative solution to this "rigorous" common law standard was to "ameliorate" the law of warranties in the insurance application, and instead legislatively declare that statements in insurance applications were representations-not warranties. Keeton , supra , at 1291.
¶ 45 This explains the language used within § 33-15-403, MCA, that deems all statements made by a consumer when applying for insurance to be "representations and not warranties," and further provides that a consumer's "misrepresentations, omissions, concealment of facts, and incorrect statements" during the application process prevent recovery under the policy only if they are fraudulent or material to the risk assumed. Because, under the common law, a contract could already be rescinded for fraud or a material misrepresentation, see Ott v. Pace , 43 Mont. 82, 89-90, 115 P. 37, 39 (1911) ; Fontaine v. Lyng , 61 Mont. 590, 595, 202 P. 1112, 1113-14 (1921) ; § 28-2-1711, MCA ; Keeton , supra , at 1282, enactment of what is now § 33-15-403, MCA, created a rescission remedy at law, applicable in a narrow, specific set of circumstances-in the insurance contract only, in the application process only, to which the insurer is entitled to relief only if the elements of the statute are established. Additional equitable considerations, such as those "which justice may require" stated in § 28-2-1716, MCA, are not considered, because the Legislature has provided a precise definition of materiality allowing rescission in § 33-15-403, MCA, which is decisive.
***255 ¶ 46 Indeed, for over fifty years, Montana and federal courts have consistently applied § 33-15-403, MCA, to rescind insurance policies for material or fraudulent misrepresentations in applications. In a single sentence that sweeps broadly but fails to mention cases by name, see Opinion, ¶ 30, the Court essentially overrules the following: McLane v. Farmers Ins. Exch. , 150 Mont. 116, 118-19, 432 P.2d 98, 99 (1967) ; Lentz v. Prudential Ins. Co. , 164 Mont. 197, 204, 520 P.2d 769, 772 (1974) (both applying the RCM predecessor of § 33-15-403, MCA, to the rescission of an insurance contract); First Sec. Bank v. Goddard , 181 Mont. 407, 417, 593 P.2d 1040, 1046 (1979) (material misrepresentation required to avoid a policy pursuant to § 33-15-403, MCA ); Steinback v. Bankers Life & Cas. Co. , 2000 MT 316, ¶¶ 12, 19, 302 Mont. 483, 15 P.3d 872 (affirming the district court's ruling that the insurance company was entitled to rescind a policy pursuant to § 33-15-403, MCA ); Schlemmer v. N. Cent. Life Ins. Co. , 2001 MT 256, ¶¶ 9, 21, 307 Mont. 203, 37 P.3d 63 (recession of insurance policy for material misrepresentation pursuant to § 33-15-403, MCA );
*664 Williams v. Union Fid. Life Ins. Co. , 2005 MT 273, ¶¶ 23-34, 329 Mont. 158, 123 P.3d 213 (amended; rescission permitted for material misrepresentations); Mount Vernon Fire Ins. Co. v. Gabelhausen, 2017 WL 2960204, No. CV 16-91-M-DLC, 2017 U.S. Dist. LEXIS 106125 at *14-15 (D. Mont. July 10, 2017) (rescission of an insurance contract permitted pursuant to § 33-15-403, MCA ); Ahmann v. Minn. Mut. Life Ins. Co. , 83 F. App'x 958, 961 (9th Cir. 2003) (applying § 33-15-403, MCA, to rescission); McNamara v. ALPS , No. SACV 13-09274-DOC, 2014 WL 12561607, 2014 U.S. Dist. LEXIS 190402, at *18-19 (C.D. Cal. Sep. 30, 2014) (Describing rescission by ALPS as a statutory remedy under § 33-15-403, MCA ).
¶ 47 To judges who work with precedent every day, stare decisis can become an ordinary concept of nominal significance, to be cited or discarded as needed, instead of being treated as "of fundamental and central importance to the rule of law." State v. Dobrowski , 2016 MT 261, ¶ 13, 385 Mont. 179, 382 P.3d 490 (citations omitted). What the Court ignores today are the legal standards that must be satisfied to depart from what should be a vibrant doctrine reflecting "our concerns for stability, predictability, and equal treatment," Dobrowski , ¶ 13 (citations omitted), particularly with regard to statutory interpretation. Stare decisis "applies strongly when interpreting statutes; once the Court has placed a construction on statutory language, the Court prefers to 'leav[e] it to the legislature to amend the law should a change be deemed necessary.' " Estate of Woody v. Big Horn Cnty. , 2016 MT 180, ¶ 20, 384 Mont. 185, 376 P.3d 127 (citing ***256 Bottomly v. Ford , 117 Mont. 160, 168, 157 P.2d 108, 112 (1945) ); see also Certain v. Tonn , 2009 MT 330, ¶ 18, 353 Mont. 21, 220 P.3d 384. We are not to overrule precedent unless "it is demonstrably made to appear that the construction manifestly is wrong." State ex rel. Perry v. Dist. Court , 145 Mont. 287, 310, 400 P.2d 648, 660 (1965) ; see also Formicove, Inc. v. Burlington N ., 207 Mont. 189, 194-95, 673 P.2d 469, 472 (1983). When faced with two viable interpretations of a statute, stare decisis is the "preferred course." State v. Kirkbride , 2008 MT 178, ¶ 13, 343 Mont. 409, 185 P.3d 340 (quoting Payne v. Tennessee , 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) ). The burden to demonstrate that precedent should be overturned falls on the party seeking to overturn precedent, and this Court will decline to overturn precedent when the parties have not raised the issue. Beach v. State , 2015 MT 118, ¶ 29, 379 Mont. 74, 348 P.3d 629. Here, no burden has been met to establish our 50-year precedent is "manifestly wrong"-or even attempted. No argument has been made-nor could one reasonably be made-that our longstanding interpretation of § 33-15-403, MCA, is not viable. Neither does the Court acknowledge that the Legislature has not acted to revise § 33-15-403, MCA, during the long years our interpretation has stood. Certain , ¶ 18.
¶ 48 Further, our longstanding application of § 33-15-403, MCA, is consistent with uniform national jurisprudence recognizing rescission of and insurance contract as the remedy for a material misrepresentation. Susan Koehler Sullivan & David A. Ring, Recurring Issues in Rescission Cases , 42 Tort Trial & Ins. Prac. L.J. 51, 54-55 (2006) ("most states have enacted statutes governing the insurer's right to rescind contracts of insurance. One of the more common statutory formulations provides ... 'Misrepresentations, omissions, concealment of facts, an incorrect statements shall not prevent a recovery under the policy or contract unless ... Material....' "); 2 Steven Plitt, Daniel Maldonado & Joshua D. Rogers, Couch on Insurance § 31:81 (3d ed. 2010) ("Generally, rescission is allowed when there has been a misrepresentation of a material fact...."); 4 Jeffrey E. Thomas & Francis J. Mootz III, New Appleman on Insurance Law § 25.02 (Library ed. 2018) ("Material misrepresentations or concealing material facts in an application for insurance may provide grounds for rescission."); Robert E. Keeton & Alan I. Widiss, Insurance Law § 6.10(e), 739 (1988) ("An insurance company may seek to terminate a contract in an action for rescission on grounds such as ... misrepresentation, or concealment."). Importantly, all 21 other states with similar warranty amelioration statutes-which negate coverage ***257 for material misrepresentations but omit the term rescission or avoidance -apply their statutes *665 to effectuate rescission.[1] See Henson v. Celtic Life Ins. Co. , 621 So.2d 1268, 1275 (Ala. 1993) (Alabama statute which provides misrepresentations shall not "prevent a recovery under the policy" unless material, applied to recession); Zurich Am. Ins. Co. v. Whittier Props. , 356 F.3d 1132, 1136 (9th Cir. 2004) (Alaska statute which provides misrepresentations shall not "prevent a recovery under the policy" unless material, applied to recession); Greves v. Ohio State Life Ins. Co. , 170 Ariz. 66, 821 P.2d 757, 763 (App. 1991) (Arizona statute which provides misrepresentations shall not "prevent a recovery under the policy" unless fraudulent and material, applied to rescission); Mulrooney v. Life Ins. Co. , No. N11C-04-192 JAP, 2014 WL 4407854, 2014 Del. Super. LEXIS 450 at *22-24 (Del. Super. Ct. Sep. 3, 2014) (Delaware statute which provides misrepresentations "shall not prevent a recovery" unless material, applied to rescission); Great Am. Ins. Co. v. Veteran's Support Org. , 166 F.Supp.3d 1303, 1305 (S.D. Fla. 2015) (Florida statute which provides misrepresentations "may prevent recovery" if material, applied to rescission); Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC , 555 F.3d 1331, 1339-40 (11th Cir. 2009) (Georgia statute which provides that a misrepresentation "shall not prevent a recovery" unless material, applied to rescission); Park v. Gov't Emples. Ins. Co., 89 Hawai'i 394, 974 P.2d 34, 39 (1999) (Hawaii statute which provides "A misrepresentation shall not prevent a recovery on the policy unless" material, applied to rescission); Robinson v. State Farm Mut. Auto. Ins. Co. , 137 Idaho 173, 45 P.3d 829, 836-37 (2002) (Idaho statute which provides misrepresentations "shall not prevent a recovery under the policy" unless material, applied to rescission); BancInsure, Inc. v. U.K. Bancorporation Inc. , 830 F.Supp.2d 294, 301 (E.D. Ky. 2011) (Kentucky statute which provides a misrepresentation "shall not bar recovery" unless material, applied to rescission); Royal Maccabees Life Ins. Co. v. Montgomery , 716 So.2d 921, 924-25 (La. Ct. App. 1998) (Louisiana statute which provides misrepresentations "shall not bar" recovery unless material, applied to rescission); Liberty Ins. Underwriters, Inc. v. Estate of Faulkner , 957 A.2d 94, 96-97 (Me. 2008) (Maine statute which provides that misrepresentations "may not prevent a recovery" unless material, applied to rescission); ***258 Wesley v. Union Nat'l Life , 919 F.Supp. 232, 234 (S.D. Miss. 1995) (Mississippi statute which provides misrepresentations "may not bar the right to recovery" unless material, applied to rescission); Siefers v. Pacificare Life Assurance Co. , 729 F.Supp.2d 1229, 1234 (D. Nev. 2010) (Nevada statute which provides misrepresentations "shall not prevent a recovery" unless material, applied to rescission); Mut. Benefit Life Ins. Co. v. Gruette , 129 N.H. 317, 529 A.2d 870, 871-72 (1987) (New Hampshire statute which provides misrepresentations "shall not bar the right to recovery" unless material, applied to rescission); Trivisonno v. Fid. & Guar. Life Ins. Co. , No. 05-3678 (JLL), 2006 WL 2583267, 2006 U.S. Dist. LEXIS 66994 at *6 (D.N.J. Sep. 5, 2006) (New Jersey statute which provides a misrepresentation "may not bar" recovery unless material, applied to rescission); Colony Ins. Co. v. Peterson , No. 1:10CV581, 2012 WL 1867047, 2012 U.S. Dist. LEXIS 70830 at *42-43 (M.D.N.C. May 22, 2012) (North Carolina statute which provides misrepresentations "will not prevent a recovery" unless material, applied to rescission); Vaughn v. Am. Nat'l Ins. Co. , 543 P.2d 1404, 1406-07 (Okla. 1975) (Oklahoma statute which provides misrepresentations "shall not prevent a recovery under the policy" unless material, applied to rescission); Story v. Safeco Life Ins. Co. , 179 Or.App. 688, 40 P.3d 1112, 1116 (2002) (Oregon statute which provides misrepresentations "shall not prevent a recovery under the policy unless" material, applied to rescission); De Smet Farm Mut. Ins. Co. v. Busskohl , 834 N.W.2d 826, 831 (S.D. 2013) (South Dakota statute which provides misrepresentations shall not "prevent[ ] a recovery under the policy" unless material, applied to rescission); Corbeil v. Pruco Life Ins. Co. , 512 F. App'x 36, 39 (2d Cir. 2013) (Vermont statute which provides misrepresentations "shall not prevent a recovery" unless material, applied *666 to rescission); St. Paul Fire & Marine Ins. Co. v. Jacobson , 48 F.3d 778, 780 (4th Cir. 1995) (Virginia statute which "bar[s] a recovery" for material misrepresentations, applied to rescission); TIG Ins. Co. v. Robertson, Cecil, King & Pruitt , 116 F. App'x 423, 425 (4th Cir. 2004) (Appling same Virginia statute to rescind a malpractice policy after a law partner misappropriated client funds); see also Thorpe v. Banner Life Ins. Co. , 632 F.Supp.2d 8, 13 (D.D.C. 2009) (D.C. statute which provides a false statement "shall not bar" recovery unless material, applied to rescission). Even Puerto Rico applies its similar statute, providing that a misrepresentation "shall not prevent a recovery" unless material, to effectuate rescission of the contract. See Moeller Tevez v. Allmerica Fin. Life Ins. & Annuity Co. , 534 F.Supp.2d 253, 259 (D.P.R. 2008) (English version).
¶ 49 Despite our longstanding precedent and the vast national ***259 jurisprudence, the Court determines that § 33-15-403(2), MCA, does not apply to the remedy of rescission because the statute does not use the term "rescission." Opinion, ¶ 26. However, given the legal context and the purpose of warranty amelioration statutes, and the rescission permitted by the common law at the time, it is clear, in my view, that the statute defines when an insurance contract may be rescinded for fraud or misrepresentations in the application process. Upon a determination that a misrepresentation in an application is material, the statute provides a complete defense to the insurer, and recovery under the policy cannot be obtained. The statute contemplates nothing else. The Court's holding to the contrary is based upon a semantical contention that defies jurisprudence. Whether it is called "rescission," "avoidance," "no recovery," or another name, the result is the same-a complete defense to any liability under the policy. Courts have not "incorrectly inserted" a right of rescission into the statute. Opinion, ¶ 30. Rather, it has always been there.
¶ 50 Having determined that § 33-15-403, MCA, provides for rescission, I summarily mention its application here. David, on behalf of himself and M&M, answered "no" to the question of whether he or any member of the firm was aware of "any fact, circumstance, act, error or, omission that could reasonably be expected to be the basis of a claim against" an attorney in the firm, and provided no supplemental information for any such facts. The answer was untrue because David was engaged in and aware of his substantial misappropriation of client funds. This is a clear material misrepresentation, and likely fraudulent, under § 33-15-403(2), MCA. Thus, I would affirm the holding of the District Court that the Policy was properly rescinded by ALPS.
¶ 51 Even if § 33-15-403, MCA, did not provide for rescission, as the Court acknowledges, Opinion, ¶ 30, n.5, an insurer has common law and statutory contract remedies of rescission. Insurance agreements are contracts and are subject to general rules of contract law. Meadow Brook, LLP v. First Am. Title Ins. Co. , 2014 MT 190, ¶ 14, 375 Mont. 509, 329 P.3d 608 (citations omitted). In Montana, there are statutory provisions governing rescission of contract, § 28-2-1701 et seq., MCA, and our common law has long recognized the equitable remedy of contract rescission, including for fraud and material misrepresentations that induced a party to enter a contract. See , e.g. , Fontaine , 61 Mont. at 595, 202 P. at 1113-14 ; Hardin v. Hill , 149 Mont. 68, 74, 423 P.2d 309, 312 (1967) ; Ott , 43 Mont. at 89-90, 115 P. at 39 ; McGregor v. Mommer , 220 Mont. 98, 106, 714 P.2d 536, 541 (1986). Over a century ago, it was well-settled in Montana that "if the insured ***260 intentionally conceals facts which are material, or makes false representations with reference to them, intending to mislead the insurer, he is guilty of actual fraud, which, at the option of the latter, avoids the policy." Pelican v. Mut. Life Ins. Co. , 44 Mont. 277, 288, 119 P. 778, 782 (1911) ; see also Weyh v. Cal. Ins. Co. , 89 Mont. 298, 304, 296 P. 1030, 1031 (1931) ("if such statements are merely 'representations,' liability on the policy can be avoided only by proof that they were not only untrue, but were material to the acceptance of the risk, willfully made with the intent to deceive, and were relied upon by the insurer."). With the passage of present-day § 33-15-403, MCA, courts allowed insurers to rescind without proof that the insured intentionally misled the insurer. *667 Am. Indem. Co. v. Elespuru , 302 F.Supp. 878, 880 n.3 (D. Mont. 1969). However, Montana courts have since allowed rescission of other contracts for material misrepresentations without proof of intent to mislead. See , e.g. , Fontaine , 61 Mont. at 595, 202 P. at 1113-14. Section 28-2-1711, MCA, provides when a party may rescind, including "if the consideration ... fails in a material respect," and § 28-2-1713, MCA, provides how a party rescinds. Likewise, rescission is statutorily authorized when consent is obtained through fraud. Sections 28-2-401 and -302, MCA. We have applied this law to effectuate the rescission of an insurance policy. See , e.g. , McLane , 150 Mont. at 118-19, 432 P.2d at 99 (requiring the insurer to meet present day § 28-2-1713, MCA, in addition to present-day § 33-15-403(2), MCA ); Lentz , 164 Mont. at 204, 520 P.2d at 772.
¶ 52 As noted above, rescission of an insurance contract is generally allowed for a fraudulent or material misrepresentation in an insurance application. For over fifty years, Montana Courts have used the specific definition of materiality found in § 33-15-403(2), MCA. However, now that the majority has divorced § 33-15-403, MCA, from rescission, it is unclear what constitutes a material misrepresentation in an insurance application which entitles an insurer to rescind under Title 28 or the common law. It also leaves unclear the purpose of § 33-15-403(2), MCA.
¶ 53 The Court declines to address common law rescission, because the issue "is not before us." Opinion, ¶ 30 n.5. Nonetheless, ALPS pleaded fraud and material misrepresentations, and asked for rescission. ALPS' reference to § 33-15-403(2), MCA, following our precedent, should not deny it of its right to rescind. The District Court declined to determine whether there was fraud, because it determined that there was a material misrepresentation that induced ALPS into the contract, which, by itself, satisfies both our common law requirement and ***261 § 28-2-1711, MCA. Further, the District Court held that the requirements of § 28-2-1713, MCA, were met. Thus, I would conclude that ALPS has met its common law and statutory burden to rescind the policy. At a minimum, the case should be remanded for ALPS to make its case for rescission under the common law or statute.
¶ 54 The Court holds that ALPS properly prevented recovery under the policy as to David and M&M, but cannot prevent such a recovery as to Michael. Opinion, ¶ 31. However, the Court provides no authority as to how a recovery can be partially prevented, as to one insured but not another. Certainly, the language of § 33-15-403, MCA, which "prevent[s] a recovery under the policy," provides no support for a partial prevention of recovery. The Court inserts into the statute what is not there. The Court further holds that all claims attributable to David are barred, apparently even if they are brought against Michael. Opinion, ¶ 31. The inconsistency and confusion in the Court's Opinion are evident.
¶ 55 The Court holds "[b]ecause the policy was not rescinded, Michael had a reasonable expectation of retaining malpractice liability insurance and the option to purchase [tail coverage] based on Policy provisions and his lack of culpability." Opinion, ¶ 32. First, on the basis that the policy was properly rescinded, I would find the reasonable expectations doctrine inapplicable. The policy is void from its inception, with no legal consequence, because of material misrepresentations on the application. See Jacobsen v. Allstate , 2009 MT 248, ¶ 51, 351 Mont. 464, 215 P.3d 649. Thus, the policy language, and the reasonable expectations that may have been drawn from the language, are not at issue. Indeed, as discussed above, enactment of § 33-15-403, MCA, was driven, in part, by the Legislature's consideration of the reasonable expectations of insureds, whereupon it required an applicant's misrepresentations to be material before recovery under the policy could be denied.
¶ 56 But even if the reasonable expectations doctrine was applicable here, its application is not warranted, particularly under the language of the Policy. First, it is reasonable to expect there would be no coverage when a policy has been issued upon deception that concealed an extensive misappropriation scheme, and the clear language of the ***262 policy *668 confirmed that expectation.[2] The incorporated application explicitly advised that a failure to disclose such facts "may result in a failure of coverage altogether." The Montana endorsement specifically provided that the Policy could be canceled "upon a material misrepresentation by the Insured."
¶ 57 Further, the plain language of the innocent insured provision, Section 4.3.1, has nothing to do with a complete failure of the policy such as a cancellation or rescission. Rather, it is an exception to Section 3.1.1, which excludes coverage for third-party claims against an insured lawyer that are based upon his fraudulent or criminal actions, for the benefit of other insured lawyers who did not personally participate in the fraudulent or criminal actions giving rise to those claims. It says nothing about protecting insured lawyers from cancelation or rescission of the policy triggered by the actions of another insured lawyer, and could not provide a reasonable expectation of the same.
¶ 58 Other courts have held that similar innocent insured provisions do not provide coverage in the context of rescission for a material misrepresentation in an insurance policy. Cont'l Cas. Co. v. Marshall Granger & Co. , 921 F.Supp.2d 111, 119-24 (S.D.N.Y. 2013) ; see also Bryan Bros., Inc. v. Cont'l Cas. Co. , 660 F.3d 827, 831-32 (4th Cir. 2011). Some malpractice policies contain a severability clause providing that statements made in an application will not be imputed to other insureds. See Marshall Granger & Co. , 921 F.Supp.2d at 121 (citing Wedtech Corp. v. Fed. Ins. Co. , 740 F.Supp. 214, 219 (S.D.N.Y. 1990) ). A severability clause creates a separate application and insurance policy for each insured, by specifying that representations in the application of one insured will not be imputed to another. Marshall Granger & Co. , 921 F.Supp.2d at 121. Such a severability clause could have been bargained for by the McLeans, who were sophisticated consumers of insurance. See ***263 Marshall Granger & Co. , 921 F.Supp.2d at 121-22 ("As a sophisticated party, [the innocent insured] could have-but chose not to-bargain with [the insurer] for the inclusion of such a severability clause."); TIG Ins. Co. , 116 F. App'x at 427 ("The [Law Firm] could have, but did not, contract for additional protection in the case of a partner making misrepresentations on behalf of the partnership on the application form."); Am. Int'l Specialty Lines Ins. Co. v. Towers Fin. Corp. , No. 94 Civ. 2727 (WK)(AJP), 1997 WL 906427, 1997 U.S. Dist. LEXIS 22610 at *31-32 (S.D.N.Y. Sep. 12, 1997) ("this transaction involved sophisticated businessmen.... The case law makes clear that [the innocent insured] could have protected himself by requiring the policy to include a severability clause, so that a misrepresentation by [one insured] would result only in rescission of the ... insurance policy as to [that insured]."). The ALPS policy had no such severability clause, but, rather, nearly the opposite, as the policy clearly demonstrated that ALPS had obtained and was relying upon Michael' s individual representation that all information provided in the application documents was true and correct, not merely David's. Section 4.14.1 provided:
By acceptance of this Policy, each Insured agrees with, represents to and assures the Company that the statements, information and representations in the Declarations, in the application for this Policy, and in the applications for each prior policy issued by the Company to the Insured, are true and correct, that the Declarations and the application form a part of this Policy, and that this Policy is issued in reliance upon the truth of such statements, information and representations.
The Policy allowed no objectively reasonable expectation that Michael could separately retain coverage if the Policy was canceled or rescinded for a material misrepresentation in the application.
*669 ¶ 59 Similarly, with regard to Michael's expectation of purchasing tail coverage, Section 4.4.5 of the policy provided that "No Extended Reporting Period Endorsement ... shall be available to the Named Insured" if ALPS "cancels or rescinds this Policy or any other policy for misrepresentation in any application...." While Michael was technically not the "Named Insured," but rather an Insured Attorney, this distinction was not sufficient to permit an objectively reasonable expectation that he would be permitted to purchase tail coverage following rescission of the policy by ALPS for misrepresentation.
¶ 60 It does not require "a painstaking study of the policy" to negate Michael and M&M's claimed expectations; rather, the Policy clearly demonstrated the consequences of the failure to disclose material facts.
***264 Therefore, the reasonable expectations doctrine does not operate to provide coverage to Michael or M&M.
¶ 61 The Court's contrary holding under the reasonable expectations doctrine is premised upon its assumption that Michael "remained blameless." It proceeds to assume facts in this regard. Opinion, ¶ 36. However, summary judgment was entered by the District Court without consideration of Michael's culpability, and thus, no determination has yet been made in this proceeding about his involvement, what he knew, or what he should have known during the application process. That being the basis for the Court's conclusion, a remand for further proceedings on these assertions should be ordered.
¶ 62 The Court states that such a remand is unnecessary as "no party to the litigation has contended that Michael had any culpability or involvement in David's wrongdoings or asserts that Michael does not meet the Policy definition of 'innocent insured.' " Opinion, ¶ 37, n.7. This ignores ALPS' argument, set forth in its opening brief, that Michael "is not innocent," and Michael's counsel's admission at oral argument that "negligent supervision" claims could be brought against Michael. As far as we know, there are no claims against Michael currently. However, mandating coverage could prompt such claims, for example, for negligently failing to sufficiently monitor the actions being taken by his sole partner over the course of many years. See M. R. Pro. Cond. 5.1(a) ("A partner in a law firm ... shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct."). The Court's decision could require ALPS to ultimately litigate David's conduct under a policy it was entitled to rescind and would have never issued had the truth been disclosed. That is not the law.
¶ 63 I dissent to Issue 1 and concur on Issue 2.
Justice Beth Baker and District Court Judge Michael Moses* join in the concurring and dissenting Opinion of Justice Jim Rice.

District Court Judge Michael Moses sitting for Justice Michael E Wheat

"Avoidance" is another term for unilateral rescission of a contract. See 7 Arthur Linton Corbin, Corbin on Contracts § 28.26 (Joseph M. Perillo ed., rev. ed. 2017).

The Court posits it is not reasonable to expect that coverage would be denied when an extensive misappropriation scheme is concealed by one of two attorneys at a firm. The Court offers a red herring scenario that "if one lawyer in a 100-person law firm lied on an insurance application, the other ninety-nine premium-paying lawyers would be excluded from coverage...." Opinion, ¶ 34 n.6. First, those are not the facts here, but further, a misrepresentation made under such facts may well require a different analysis and conclusion regarding its materiality, the decisive issue under § 33-15-403(2), MCA. Here, the misrepresentation concealed a massive fraud scheme that was occurring in a two-man firm.